**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1569. TORO v. THE STATE.                                    AD-060C

ADAMS, Judge.

On October 28, 2005, an indictment was returned charging, inter alia, Elierzer Toro and Brent Smith with trafficking in methamphetamine, possession of MDMA, misdemeanor possession of marijuana (less than one ounce), and possession of a firearm in the commission of a felony; Toro was also charged with theft by receiving stolen property (Indictment Number 05SC36729). A short time later, on November 4, 2005, an indictment was returned charging, inter alia, Toro and Jennifer Klein with trafficking in methamphetamine (Indictment Number 05SC36979). The trial court granted the State's motion to join the indictments for trial, and a jury subsequently convicted Toro of all charged offenses. Toro filed motions for new trial and to vacate

his sentence, and the trial court denied both motions but modified Toro's sentence. Toro appeals, challenging the trial court's denial of both motions.

The evidence adduced at trial, construed to support the verdict as we must on appeal, shows the following: Toro was first arrested on October 14, 2005. Tim Brown, who at that time was working as an undercover officer with the Atlanta Police Department, testified that Officer Willie Robinson and he were conducting surveillance in an unmarked car in the Lenox Mall parking lot after being advised by a police investigator that two "suspects" were coming there to meet with a victim who had reported his car stolen. The victim was also parked in the Lenox lot, and Brown observed two men, subsequently identified as Toro and Brent Smith, arrive in a Honda Accord with a "drive out tag" on the back. Toro exited the car and exchanged words with the victim, and then Toro got back in the Honda and drove out of the parking lot. Brown and Robinson followed the Honda, which was stopped by a marked police car. Toro and Smith were taken into custody.

At the time of his arrest Toro had a gun holster on the right side of his belt, and Brown identified a gun holster introduced into evidence at trial as the same one Toro was wearing that day. Brown testified that a loaded Hi-Point 9mm semiautomatic pistol, which fit "perfectly" into the holster Toro was wearing, was found inside the

vehicle. Additionally, an electronic scale and crystal methamphetamine were found inside a black bag located in the car's middle console, and MDMA, or ecstasy, a small amount of marijuana, a digital scale, small plastic baggies and a radio scanner were found either inside the black bag or scattered throughout the car. Various keys, which appeared to be either vehicle keys or house keys, were also found in the car.

Brent Smith, who was arrested and charged along with Toro, testified next. According to Smith, he had been "hanging out" with Toro and other methamphetamine ("meth") users "off and on" for about two weeks. Smith testified that Toro had driven him back to his motel the night before the incident here, and at that time Toro was driving a Honda Accord which he assumed was stolen because it did not have an ignition. Toro came back to the motel to pick up Smith the next morning, in what appeared to Smith to be a different Honda because it did have an ignition. Smith also said that Toro brought him methamphetamine and ecstasy, which they used before they left the motel. They then went to see someone about a stolen Mercedes automobile, which he and Toro were planning to give back to the owner for a reward. Smith, who acknowledged that his memory of the day was incomplete because of his drug use, testified that he thought they stopped to let Toro speak to the owners of the Mercedes, and the next thing he knew they were surrounded by police.

Smith also identified the gun police recovered from the Honda as being the same one that Toro "always had" with him and testified that the holster that was introduced at trial was the same one Toro was wearing when he was arrested. Smith also said that Toro had the gun in the holster earlier in the day and that Toro usually carried around the black case that was found in the car.

On cross-examination, Smith acknowledged that he had been indicted for the same crimes as Toro, except that he was not charged with theft by receiving; that those charges were still pending against him; and that he was facing considerable jail time because of those charges. However, he denied that his case would be dead docketed because of the testimony he gave against Toro; he said he had no idea what would happen to his case after Toro's trial.

Officer Willie Robinson testified concerning the surveillance he conducted with Brown that led to Toro and Smith's arrest. According to Robinson, the Honda that Toro was driving that day was "packed with . . . stuff," as if someone had been living in it, and that drugs and a gun were also found in the car. Robinson also testified that a tag search revealed that the car had been stolen.

The owner of the Honda testified that on October 12, 2005, she had driven her 1996 Honda Accord to choir practice and that she had parked her vehicle on the

4

bottom level of the deck of her church parking garage because she was eight months pregnant. When she returned to the garage after practice, she discovered her car was gone. She reported the theft, and several days later, on October 14, she received a call from police that her car had been located. When she went to retrieve her car, she discovered that her key would open the door but would not start the car. However, a key found in the car when Toro was apprehended started the car, but that key would not open the door. She said that the metal tag she had on the car had been replaced with a paper tag, but the officers found her metal tag in the car and returned it to her. She also said that the car was full of someone else's personal belongings, that her stereo had been removed and replaced with one that did not exactly fit, and that the car had been damaged in various ways. And many of the items she had in the car, including equipment which she had received for the child she was expecting, were missing.

Toro was again arrested on October 28, 2005. Officer Robert Blauvelt testified that a little after 10:10 a.m. on that date, he was dispatched to a Ramada Inn on Piedmont Road in Atlanta, Georgia in response to a call concerning a suspicious person or persons sleeping in a car. Blauvelt, an officer-in- training, and another officer, Craig Faircloth, responded to the call. When they approached the car, they

observed a female, subsequently identified as Jennifer Klein, and a male, subsequently identified as Toro, sleeping in the back seat of the car. Toro was wearing what appeared to be a bullet proof vest and a holster. During a search of the car, officers found a "fanny pack" containing what was subsequently identified as methamphetamine located in between Toro and Klein in the back seat. Both were subsequently charged with trafficking in methamphetamine. Toro also had $470 in cash in his left pants pocket. Toro denied knowing the money was in his pocket, and denied owning the fanny pack where the drugs were found and denied owning the drugs. Klein and the owner of the car, who was staying at the hotel, also denied they owned the drugs.

Klein testified that at the time she was arrested, she was enrolled in college in Alabama and that she had come to the Atlanta area to visit for the weekend, but she never went back to school. Klein had been staying at a fellow meth user's house, along with a number of other "squatters," but the owner of the house had gotten tired of the squatters and had given her money to rent a hotel room. Klein and several others went to the Ramada on Piedmont Road, and she got a room in her name. She testified she got very high while she was there and thus could not remember all the

6

details of what happened next.[1] She thought Toro, whom Klein said she had met only about four times before that day, came to meet someone at the motel, and most of those in the room, including Toro, left early that morning to give someone a ride to work. Klein said she did not remember much about the ride, except that she and Toro were riding in the back seat and that at some point she fell asleep. She did not remember anything else until police woke her up.

Klein also testified that the trafficking charge was still pending against her, and she denied that she had been offered anything in connection with those charges in exchange for her testimony. She also testified that she had never sold meth and that the meth culture involved users sharing the drug more or less freely, and that someone would normally give her meth almost every day and that she "hardly ever" had to buy the drug. Klein testified again on cross-examination that she did not have an agreement with the State in exchange for her testimony, but she had spoken to her lawyer about trying to go to drug court or to have her charge dismissed.

Other evidence will be set forth below as necessary to address Toro's specific claims of error.

---

[1] Klein testified she could not remember exactly how long she had been without sleep, but she thought it was about seven days.

1. Toro first challenges the sufficiency of the evidence to support his conviction for theft by receiving a stolen automobile, arguing that the evidence was insufficient to show that he knew that the vehicle was stolen. See OCGA § 16-8-7 (a). However, contrary to Toro's arguments on appeal, the evidence recited above, as well as other evidence presented at trial, was more than sufficient to show that Toro had the requisite knowledge. This enumeration thus provides no basis for reversal. *Green v. State*, 277 Ga. App. 867, 869 (1) (627 SE2d 914) (2006).

2. Toro next contends that his conviction on the trafficking in methamphetamine charge in Case No. 05SC36979 was void and should have been vacated because of irregularities in the composition of the grand jury.[2] However, the record shows that Toro did not file his motion to vacate until April 8, 2011, which was almost four years after he was tried and convicted of this charge. Thus, his challenge to the composition of the grand jury was clearly untimely, and we will not consider the merits of his claim. See *Dempsey v. State*, 290 Ga. 763, 766 (1) (727 SE2d 670) (2012), explaining *Langlands v. State*, 282 Ga. 103,107 (3) (646 SE2d

---

[2] There is nothing in the record to suggest that the grand jurors were not properly qualified, sworn or charged; rather, Toro's challenge pertains to a procedure established by the Fulton County Superior Courts to use "reserve" grand jurors when available and needed.

8

253) (2007). See also *Colon v. State*, 275 Ga. App. 73, 78-79 (3) (619 SE2d 773) (2005).

3. Lastly, Toro cites several instances of alleged ineffective assistance of trial counsel. To prevail on this claim, Toro must show both that his counsel's performance was deficient and that this deficient performance prejudiced his defense. *Boseman v. State*, 283 Ga. 355, 358 (3) (659 SE2d 364) (2008), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). As recently emphasized by our Supreme Court, quoting *Harrington v. Richter,* ___ U. S. ___, (IV) (B) (131 SC 770, 178 LE2d 624) (2011), to show prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable. (Cit)." *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

(a) (i) Toro first contends that his trial counsel was ineffective when she failed to object or move for a mistrial when Officer Robinson testified that he arrested Toro and Smith on October 14, 2005 for trafficking in methamphetamine, possession of a stolen car, and a "convicted felon with a weapon." Toro argues that because Smith had testified prior to Robinson's testimony that he had not had any legal problems before his arrest on these charges, this testimony necessarily implied that Toro was the convicted felon.

9

At the motion for new trial hearing, Toro's trial counsel testified that she was surprised she had not objected to this testimony and it was not part of her planned strategy. It is true that "[g]enerally, the character of the parties is irrelevant and no evidence of a criminal defendant's general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." (Citation, punctuation and footnote omitted.) *Carrie v. State*, 298 Ga. App. 55, 56 (1) (679 SE2d 30) (2009). But this Court also has held that passing, implied or indirect references to incarcerations or prior convictions do not place an accused's character in evidence, especially if the witness has not been specifically instructed to avoid such references. Id. at 59 (e); See *Rayshad v. State*, 295 Ga. App. 29, 34 (2) (a) (670 SE2d 849) (2008), and citations therein, at n. 22. See also *Jackson v. State*, 302 Ga. App. 412, 415 (1) (691 SE2d 553) (2010). In this case the reference was passing and equivocal–Robinson testified that "I *think* we put on it trafficking in meth, stolen vehicle, [and] convicted felon with a weapon." Thus, Toro cannot establish that this testimony impermissibly placed his character in evidence.

Moreover, even if trial counsel performed deficiently by failing to object to this testimony, reversal is not necessarily required. "To satisfy the prejudice prong, [Toro] must show a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Punctuation and citation omitted.) *Rayshad v. State*, 295 Ga. App. at 34 (2). Toro was not actually charged with possession of a firearm by a convicted felon, and no other direct references to his prior convictions occurred during trial. Further, the other arresting officer testified that when Toro was arrested, he was charged with possession of a firearm, and made no reference to Toro being a convicted felon and being charged accordingly. And, having carefully reviewed the evidence here, it does not appear with any reasonable probability that but for counsel's alleged deficient performance, the outcome at trial would have been different. *Kimble v. State*, 301 Ga. App. 237, 250 (7) (e) (687 SE2d 242) (2009).

(ii) Toro also contends that his trial counsel was ineffective for failing to object or move for a mistrial when Smith's attorney stated, in the presence of the jury, that the State had approached him about diverting Smith's case to drug court or a similar program because he did not have any priors. Toro argues that this testimony, when coupled with Klein's testimony that she was attempting to get similar lenient treatment, led to the "clear implication" that Toro was not offered the same treatment because he had prior offenses.

11

When questioned at the motion hearing, trial counsel once again testified that she was surprised she failed to object and that her failure was not planned trial strategy. However, for the reasons discussed above, we do not believe any implied reference to Toro's prior criminal history from such testimony amounted to the improper introduction of bad character evidence. In fact, Klein simply testified that she hoped to have her case diverted to drug court; unlike Smith, no evidence was introduced that she had been approached by the State with a specific "deal" because she had no prior criminal history. Thus, Toro has failed to show his counsel performed deficiently by failing to interpose an objection or move for a mistrial on this basis.

(b) Toro also contends that his trial counsel was ineffective because she failed to object or move for a mistrial when Klein testified on redirect examination that a meth user named Karen Lemax told her that Toro had stolen the car another user had loaned her and that he had also stolen methamphetamine from her. The transcript shows that the prosecuting attorney asked two more questions after this testimony--to clarify which car was stolen and to ask the quantity of drugs allegedly stolen, and at that point defense counsel interposed a hearsay objection. The trial court sustained the objection, and the prosecuting attorney pursued another line of questioning. Trial

12

counsel testified that her failure to object immediately was an oversight on her part and not part of her trial strategy. However, inasmuch as the transcript reveals that the two intervening questions only clarified the previous testimony and that trial counsel then, in fact, posed a successful hearsay objection, after which no additional references to this incident occurred, we find that Toro has failed to demonstrate either deficient performance or prejudice from his counsel's initial failure to object.

Moreover, even assuming that trial counsel performed deficiently in each instance where Toro contends that she should have objected or moved for a mistrial, and even considering the cumulative effect of each passing or indirect reference to Toro's prior criminal history or other crimes, we do not believe that it is reasonably probable that any resulting prejudice led to a different outcome.

(c) Lastly, Toro contends that his first appointed counsel was ineffective because counsel failed to adequately investigate and discuss the benefits of accepting the State's initial plea bargain offer of 15 years with no recidivist treatment. Specifically, Toro argues that counsel did not explain "Georgia's parole system" and that if he had a better understanding of that system he would have taken the original offer. Further, Toro testified that by the time he better understood Georgia's parole

13

system the State was only willing to offer him a deal that included recidivist sentencing.

"Objective professional standards dictate that a defendant, absent extenuating circumstances, is entitled to be told that an offer to plead guilty has been made and to be advised of the consequences of the choices confronting him. For counsel to do otherwise amounts to less than reasonably professional assistance." (Citation omitted.) *Mann v. State*, 240 Ga. App. 809, 810 (1) (b) (524 SE2d 763) (1999). But there is no constitutional requirement that a defendant be informed of his parole eligibility prior to accepting, or rejecting, the State's plea offer. *King v. State*, 246 Ga. App. 100, 102 (3) (539 SE2d 614) (2000). "Eligibility or ineligibility for parole is not a consequence of a plea of guilty, but rather is a matter of legislative grace or a consequence of the withholding of legislative grace. . . . There is no constitutional requirement that a defendant be advised of such collateral consequences for his decision to reject or accept a plea bargain to be valid." (Citation and punctuation omitted.) Id.

However, our Supreme Court has distinguished between counsel's failure to inform a defendant of the collateral consequences of accepting or rejecting a guilty plea , such as eligibility for parole, and counsel's *affirmatively misrepresenting* those

14

consequences. *Rollins v. State*, 277 Ga. 488, 489 (1) (591 SE2d 796) (2004); see also *Stinson v. State*, 286 Ga. 499, 500 (1) (b) (689 SE2d 323) (2010); *Smith v. Williams*, 277 Ga. 778, 778-779 (1) (596 SE2d 112) (2004). "Should . . . counsel make an affirmative misrepresentation about the collateral consequences of a plea, such as parole eligibility, the misrepresentation may form the basis of an ineffective assistance of counsel claim." (Citations omitted.) *Crowder v. State*, 288 Ga. 739 (707 SE2d 78) (2011).

Toro has not contended that his first appointed counsel affirmatively misrepresented his eligibility, or ineligibility for parole, but rather he asserts that his counsel did not sufficiently explain Georgia's parole system. Thus, Toro has failed to show that his counsel rendered deficient performance, and the trial court did not err by refusing to grant Toro a new trial on the basis that his trial counsel was ineffective for this reason. *Mann v. State*, 240 Ga. App. at 810 (1) (b).

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*