**FOURTH DIVISION
DOYLE, P. J.,
MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 3, 2013**

# In the Court of Appeals of Georgia

A13A0666. MILLER v. THE STATE.

McFADDEN, Judge.

After a jury trial, Eric Miller was convicted of two counts of criminal attempt to commit theft by receiving stolen property. He appeals, challenging the sufficiency of the evidence and the admission of his confession. Because there is enough evidence from which the jury was authorized to find guilt beyond a reasonable doubt and the trial court did not clearly err in finding that the confession was voluntarily made, we affirm.

1. *Sufficiency of the evidence.*

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Dixson v. State*, 313 Ga. App. 379 (721 SE2d 555) (2011) (citations and punctuation omitted).

So viewed, the evidence shows that the Griffin Police Department received complaints from retail stores that merchandise was being stolen from them and then being "fenced through a pawn shop." The police set up a sting operation with an informant who had previously shoplifted merchandise from stores and then sold it to pawn shops. The informant testified that on one prior occasion he had sold stolen merchandise to Miller, a pawn shop owner. A Home Depot store loaned new power drills to the police to use in the sting operation, during which the informant was to represent the drills as stolen to Miller.

On February 17, the informant went into Miller's pawn shop with two of the new drills still in their original packaging. Miller asked the informant if the items were "clean," and the informant responded that "it's as clean as it gonna be." The informant further told Miller, "[I]t ain't hot, hot like that. It ain't come out nobody's house or nothing like that." Miller purchased the two new drills, and created a pawn ticket for the transaction on which he failed to include the serial numbers of the items.

2

As a pawn shop owner, Miller was required to list the items on a property tracking website used by police called leadsonline.com, and he again did not include the serial numbers of the drills on that listing. The next day, February 18, the informant returned to the store with two more drills. Miller again bought both drills from the informant, and he again failed to include the serial numbers for the items on either the pawn ticket or the leadsonline website. Miller also insisted that the informant take the new packaging of one of the drills out of the store when he left.

On March 3, 2011, the informant tried to sell more new drills to Miller, but Miller told him that the tools were not selling. Miller told the informant that he could instead bring in games, televisions and electronics, which were selling well. The informant then told Miller that he had somebody who worked at Wal-Mart who could help him get televisions out the door. Miller responded that was fine as long as he did not bring the televisions in their boxes.

Several weeks later, the police went to Miller's pawn shop and told Miller that they were investigating the informant and wanted to recover the items that Miller had purchased from the informant. Miller told the police that he had been suspicious of the informant, but had no explanation for why he had taken the items from the informant if he was suspicious of him. Miller was later arrested, and during an

3

interview with an officer he stated that he had made a mistake and "felt funny" about it when the informant had come back the second day.

At trial, the informant explained that to a pawn broker who deals in stolen goods, his comments to Miller about the items not being "hot, hot like that" and not coming out of someone's house meant that he had stolen the goods from a store, but no one had seen him and the police were not looking for the stolen items. He testified:

> Well, when you're dealing with pawn shops, [not] hot, hot means that it didn't come out of anybody's house or you didn't run out of the store with it. It means that they're not out specifically looking for that item at that particular time. But it also means that it's not legal, because hot, hot, that's what it's saying. It's not hot, hot, you don't have to worry about the police coming in looking for it at that particular time. . . . [I]f it's hot, hot, pawn shops are not going to deal it. You know, if it came out of someone's house and they know that the item is hot at that particular time like that, no, they are not gonna deal with you because they know a week or two, the police will be here soon to check and see did anybody pawn that particular item or maybe have serial numbers for it or whatever.

A police investigator similarly testified that in pawn shop vernacular there are two degrees of "hotness" of stolen goods: one being something that "the police are not actively looking for" and the other being "hot, hot . . . that the police are in fact actively looking for it." The officer also testified that in order to avoid buying

shoplifted property, pawn shop owners, when presented with new items in their original packaging, typically will "turn these people away unless they have a receipt."

"A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. 'Receiving' means acquiring possession . . . of the property." OCGA § 16-8-7 (a).

Miller argues that there is insufficient evidence to support his convictions for criminal attempt to commit theft by receiving stolen property because there was no direct evidence that he knew the drills were stolen. However, "[t]he evidence included facts and circumstances from which [his] knowledge that the [drills were presented to him as] stolen could have been inferred." *Bradley v. State*, 317 Ga. App. 477, 479-480 (731 SE2d 371) (2012) (citation omitted). Such facts and circumstances included the informant telling Miller that the items were not "hot, hot," Miller's failure to put the serial numbers of the items on the pawn tickets or the property-tracking website, his instruction to the informant to remove the packaging of one of

5

the new items from the store and his own admissions that he had been suspicious of the informant and "felt funny" about the transactions. Accordingly, "the evidence recited above, as well as other evidence presented at trial, was more than sufficient to show that [Miller] had the requisite knowledge. This enumeration thus provides no basis for reversal." *Toro v. State*, 319 Ga. App. 39, 43 (1) (735 SE2d 80) (2012) (citation omitted).

2. *Voluntariness of statement.*

Miller claims that the trial court erred in admitting his custodial statement to police into evidence because it was induced by assurances of reduced charges or punishment. The claim is without merit.

> A statement given by an accused to law enforcement is admissible against him only if the statement was voluntary, and in Georgia, that means that the statement must not have been induced by hope of benefit, among other things. See former OCGA § 24–3–50. As we have explained before, a hope of benefit arises from promises related to reduced criminal punishment - a shorter sentence, lesser charges, or no charges at all.

*Edenfield v. State*, ___ Ga. App. ___ (2) (Case No. S13P0210, decided June 17, 2013) (citations and punctuation omitted).

Here, Miller points to comments made by the interrogating officer that he would ask the prosecuting attorney about various plea bargain possibilities

6

concerning the charges and punishments imposed, including, at Miller's request, possible dismissal of the charges in exchange for Miller closing his pawn shop. However, as the videotape of the interview and the officer's testimony at the hearing to determine the voluntariness of the statement make clear, the officer plainly told Miller that he "didn't have the authority to make deals with him in his case, that the DA's office would have to make that decision, or the Judge, and that [the officer] would in fact call them and relay to them what [Miller's] proposition was."

As this court has held, "a hope of benefit may be dispelled by a statement that an officer has no influence over an accused's possible punishment." *State v. Brown*, 308 Ga. App. 480, 484 (1) (708 SE2d 63) (2011) (citations omitted). See also *Preston v. State*, 282 Ga. 210, 212 (2) (647 SE2d 260) (2007) (interrogating officer's discussion of death penalty and life without parole and his statement that district attorney based charges brought on a recommendation from police did not amount to hope of benefit); *Valentine v. State*, 289 Ga. App. 60, 62 (2) (656 SE2d 208) (2007) (even assuming statements offered the hope of a lighter sentence, any hope of benefit was dispelled by officer's statement that he had no influence over possible punishment); *Stephens v. State*, 164 Ga. App. 398, 399 (3) (297 SE2d 90) (1982) (officer's statement that judges love to hear that defendants helped the police did not

7

constitute hope of benefit where officer also stated he could not promise any help). Accordingly, "[t]he trial court's finding that [Miller's] statement was not the result of a hope of benefit given by the interrogating officer was not clearly erroneous and is consequently upheld." *Preston*, supra.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*