**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 15, 2014

# In the Court of Appeals of Georgia

A14A0190. ALEXANDER v. THE STATE.

BRANCH, Judge.

Calvin Alexander brings this appeal from the denial of his timely-filed motion to withdraw his guilty plea. In his sole enumeration of error, Alexander argues that his lawyer's failure to advise him, prior to the entry of his guilty plea, that he would be ineligible for parole constituted ineffective assistance and entitles him to withdraw that plea. Pursuant to the Georgia Supreme Court's decision in *Williams v. Duffy*, 270 Ga. 580, 581 (1) (513 SE2d 212) (1999), we find that Alexander's counsel was effective, as a matter of law. Accordingly, for reasons explained more fully below, we affirm the order of the trial court.

The record shows that on March 14, 2011, Alexander entered a non-negotiated *Alford* plea[1] in Fulton County Superior Court under which he pled guilty to three counts of aggravated child molestation,[2] two counts of statutory rape,[3] three counts of child molestation,[4] and two counts of enticing a child for indecent purposes.[5] At the plea hearing, Alexander stated that he was entering the plea because he believed doing so was in his best interest; that he understood he was entering a non-negotiated guilty plea with the sentence to be decided by the judge; that he had been advised of the maximum and minimum sentence he could receive for each charge; and that he understood that the State was asking for a sentence of 30 years, but that the judge did not have to honor that request.

---

[1] Alexander pled guilty pursuant to *North Carolina v. Alford*, 400 U. S. 25 (91 SCt 160, 27 LEd2d 162) (1970), and thereby pled guilty without admitting his guilt. See *Wyman v. State*, 267 Ga. App. 118 (598 SE2d 855) (2004) (*Alford* "allows a guilty plea despite a claim of innocence where there is strong evidence of guilt that negates the claim of innocence and provides a factual basis for the guilty plea").

[2] OCGA § 16-6-4 (c).

[3] OCGA § 16-6-3 (a).

[4] OCGA § 16-6-4 (a) (1).

[5] OCGA § 16-6-5 (a). The State elected to nolle prosse one count of aggravated child molestation and one count of enticing a child for indecent purposes.

The State had previously filed notice that it was seeking to have Alexander sentenced as a recidivist pursuant to OCGA § 17-10-7 (a), and at the plea hearing the State introduced evidence of Alexander's two prior felony convictions.[6] Following the introduction of this evidence, Alexander's attorney acknowledged that under OCGA § 17-10-7 the trial court had no option but to sentence Alexander to the statutory maximum of thirty years on each count of aggravated child molestation, but asked that the court require only ten years of the sentence be served in incarceration[7] and that sentences on all counts be imposed to run concurrently. The trial court then sentenced Alexander to 30 years on each of the aggravated child molestation charges with 15 years to be served in incarceration and the balance on probation; 15 years to serve on

---

[6] These included a 1991 conviction for theft of U. S. mail, and a 1998 conviction on four counts of possession of a firearm by a convicted felon. There was also some discussion about the fact that Alexander had been convicted in 2007 for possession of cocaine, but the State apparently did not introduce a certified copy of that conviction, as none appears in the record.

[7] OCGA § 17-10-7 (a) provides that where a defendant who has been previously convicted of a felony is convicted of a subsequent felony, that defendant "shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense." The crimes at issue occurred between January 2005 and June of 2006, and at that time the statutory maximum sentence for aggravated child molestation was 30 years. See OCGA § 16-6-4 (d) (1) (2005).

3

each of the statutory rape charges; and 15 years to serve on each of the child molestation charges, with all sentences to run concurrently.[8]

After being sentenced, Alexander filed a motion to withdraw his guilty plea on the grounds that it had resulted from ineffective assistance of counsel, due to trial counsel's failure to advise him that such a plea would render him ineligible for parole.[9] The motion was heard by the same judge who presided at Alexander's plea hearing and imposed his sentence. As Alexander's lawyer's statements at the plea hearing made clear, he was aware that Alexander was being sentenced under the recidivist statute and that Alexander would therefore be required to serve in incarceration whatever portion of the sentence the trial judge did not suspend or probate. At the motion hearing, however, the lawyer testified he did not have any recollection of having discussed with his client the fact that his client would not be

---

[8] The court merged the charges of enticing a child for indecent purposes with the charges of aggravated child molestation.

[9] Alexander also argued below that because he was not made aware of his ineligibility for parole, his plea was not entered knowingly and voluntarily. Alexander has not pursued this argument on appeal.

4

eligible for parole if he pled guilty.[10] Trial counsel also testified that Alexander had rejected an initial plea offer by the State and had elected to proceed to trial. After witnessing general voir dire of the jury panel, however, Alexander told his attorney that he wanted to enter a guilty plea. Trial counsel then discussed with Alexander the fact that they did not know what sentence the judge would impose, but that he suspected it would be a longer sentence than that proposed by the State in its initial plea offer.[11]

---

[10] Trial counsel further testified at the new trial hearing that at the time he represented Alexander, he understood that persons convicted of aggravated child molestation are ineligible for parole and must instead serve the entire sentence imposed by the trial court. At the time of Alexander's crimes, however, the law required only that a person convicted of aggravated child molestation serve a minimum of ten years in prison. See OCGA § 17-10-6.1 (2005) (defining aggravated child molestation as a serious violent felony and providing that any person convicted of that crime "shall be sentenced to a mandatory minimum term of imprisonment of ten years and *no portion of the mandatory minimum sentence* imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court and shall not be reduced by any form of pardon, parole, or commutation of sentence by the State Board of Pardons and Paroles") (emphasis supplied). Given that the trial court sentenced Alexander to the statutory maximum of 30 years on each of the aggravated child molestation charges and required him to serve 15 years in incarceration with the remainder on probation, it appears that his ineligibility for parole results from the fact that he was sentenced as a recidivist, and not from the fact that he was convicted of aggravated child molestation. See OCGA § 17-10-7 (a). The trial judge's statements at the hearing on Alexander's motion support this conclusion.

[11] It appears from the record that the State's plea offer would have required a ten year period of incarceration.

5

Alexander also testified at the motion hearing and stated that he would not have entered a guilty plea had he known that he would be ineligible for parole. Alexander further testified, however, that he decided to plead guilty because he had doubts about whether his lawyer was prepared for trial and because the trial judge told him that if a jury found him guilty, she would sentence him to 60 years.

At the close of the hearing, the trial court denied Alexander's motion to withdraw his guilty plea, and it subsequently entered a written order to that effect, finding that Alexander's plea "was knowingly, voluntarily, and intelligently entered with the competent advice of counsel." Alexander then filed this appeal.

Once a defendant has been sentenced he will be allowed to withdraw a guilty plea only where he "establishes that such withdrawal is necessary to correct a manifest injustice" e.g., that the plea resulted from ineffective assistance of counsel or that it was not entered voluntarily and knowingly. *Green v. State*, 324 Ga. App. 133 (749 SE2d 419) (2013) (citations and punctuation omitted). In determining whether such a manifest injustice occurred "the trial court is the final arbiter of all factual issues raised by the evidence" and its decision on whether to allow the withdrawal of a guilty plea will not be disturbed absent a manifest abuse of discretion. *Bailey v. State*, 313 Ga. App. 824, 825 (723 SE2d 55) (2012) (citation and punctuation omitted). Where,

as here, a defendant asserts that his guilty plea is invalid because it resulted from ineffective assistance of counsel, the trial court was required to apply the two-prong test set forth in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984), under which a defendant must prove both that his trial counsel performed deficiently and that he suffered prejudice as a result of that performance. Id. A defendant's ineffective assistance claim will fail where he cannot meet his burden of proof as to either prong of the *Strickland* test and under such circumstances we need not examine the other prong.[12] *Hargrove v. State*, 291 Ga. 879, 881 (2) (734 SE2d 34) (2012).

We begin with the issue of whether Alexander's trial counsel performed deficiently in advising Alexander with respect to his guilty plea. "To prove that the performance of his lawyer was deficient, [Alexander] must show that the lawyer performed his duties . . . in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms." *Washington v. State*, 294 Ga. 560, 564-565 (3) (755 SE2d 160) (2014), citing *Strickland*, 466 U. S. at 687-688 (III) (A). The State argues that we must affirm the trial court's order because, as

---

[12] In this case, the trial court's order found that counsel had provided competent advice to Alexander and did not address the prejudice prong of *Strickland*.

7

a matter of law, the collateral consequences doctrine prevents Alexander from proving the deficient performance prong of *Strickland*. Alexander, however, argues that the collateral consequences doctrine applies only where a defendant's motion to withdraw his guilty plea is based on a claim that the plea was neither knowing nor voluntary, and that it cannot apply where such a motion is based on a claim of ineffective assistance of counsel.

The collateral consequences doctrine stems from the rule that "[a]s a matter of constitutional due process, before a defendant pleads guilty, the trial court must advise him of the 'direct' consequences of entering the plea, but not of all the potential 'collateral' consequences, in order for the guilty plea to be considered knowing and voluntary." *Smith v. State*, 287 Ga. 391, 394 (2) (a) (697 SE2d 177) (2010), citing *Brady v. United States*, 397 U. S. 742, 755 (90 SCt 1463, 25 LEd2d 747) (1970). "Direct consequences may be described as those within the sentencing authority of the trial court, as opposed to the many other consequences to a defendant that may result from a criminal conviction." *Smith*, 287 Ga. at 394 (2) (a) (citations omitted). Consequences over which the trial court has no control are considered collateral consequences. Id. The Georgia Supreme Court has previously held that ineligibility for parole represents a collateral consequence of a guilty plea as "eligibility or

ineligibility for parole is not a 'consequence' of a plea of guilty, but a matter of legislative grace or a consequence of the withholding of legislative grace" and therefore has "only a collateral effect" on a defendant's sentence. *Williams*, 270 Ga. at 581 (1) (noting that parole ineligibility "in no way lengthen[s] the sentence itself, but condition[s] satisfaction of that sentence upon [a defendant's] incarceration for the designated . . . period" specified in the sentence of the court) (citations omitted).

As the foregoing demonstrates, the collateral consequences doctrine was originally formulated for application in those cases where a defendant seeks to withdraw his guilty plea based on an alleged violation of his Fifth Amendment right to due process, i.e., where the defendant's motion to withdraw his guilty plea is based on a claim that the plea was neither knowing nor voluntary. See *Smith*, 287 Ga. at 394 (2) (a). Despite its origins, however, both the Georgia Supreme Court and this Court have applied the doctrine in cases where a defendant was seeking to withdraw his guilty plea based on an alleged violation of his Sixth Amendment right to effective assistance of counsel. See *Williams*, 270 Ga. at 582 (1) (holding that trial counsel's failure to inform a defendant entering a negotiated guilty plea that he would be ineligible for parole "does not constitute ineffective assistance of counsel," because parole ineligibility was "a collateral consequence of the negotiated sentence"); *Toro*

*v. State*, 319 Ga. App. 39, 46 (3) (c) (735 SE2d 80) (2012) (same); *Hall v. State*, 313 Ga. App. 670, 673 (2) (722 SE2d 392) (2012) (same). It is these cases on which the State relies to support its argument that Alexander cannot prove the deficient performance prong of his ineffective assistance claim.

Alexander, however, argues that the United States Supreme Court decision in *Padilla v. Kentucky*, 559 U. S. 356 (130 SCt 1473, 176 LE2d 284) (2010), requires us to hold that trial counsel's failure to inform a client of the collateral consequences of a guilty plea constitutes deficient performance. Specifically, Alexander argues that *Padilla* held that the collateral consequences doctrine could not apply to cases where a defendant's motion to withdraw his guilty plea is premised on a claim of ineffective assistance of counsel, rather than on a claim that the plea was not entered knowingly and voluntarily. And because Alexander's trial counsel admitted that he could not remember discussing with Alexander the impact a guilty plea would have had on his parole eligibility, Alexander reasons that the trial court erred when it denied his motion to withdraw that plea. We find that Alexander's argument as to the inapplicability of the collateral consequences doctrine to an ineffective assistance of counsel claim has significant support in the law.

10

In *Padilla*, the Supreme Court noted that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*." 559 U. S. at 365 (II). Rather, the Court made clear that the test for whether counsel is constitutionally effective is whether counsel's performance was "'reasonableness under prevailing professional norms.'" Id. at 366 (III) (quoting *Strickland*, 466 U. S. at 688 (III) (A)). After analyzing the impact of deportation on criminal defendants who were otherwise legal residents of this country, the *Padilla* court concluded that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation" associated with a guilty plea and that a failure to do so constitutes deficient performance. Id. at 367 (III) (citations omitted). In reaching this conclusion, however, the *Padilla* court expressly declined to decide whether the collateral consequences doctrine is inapplicable in all cases where a defendant is seeking to withdraw his guilty plea based on alleged violation of his Sixth Amendment right to effective counsel. 559 U. S. at 365 (II) (whether a court should never distinguish between direct and collateral consequences when analyzing a Sixth Amendment claim "is a question we need not consider in this case because of the unique nature of deportation.")

11

Shortly after *Padilla* was decided, the Georgia Supreme Court considered whether a trial court's failure to inform a criminal defendant of the risk of deportation resulting from his guilty plea violated the defendant's Fifth Amendment rights, thereby invalidating the plea. *Smith*, 287 Ga. 391-392. The *Smith* court applied the collateral consequences doctrine and concluded that the trial court's failure to inform the defendant of the deportation risk did not render his guilty plea unknowing or involuntary. The court reasoned:

> despite its discussion of the importance of deportation risks to some defendants, in the end the [United States] Supreme Court [in *Padilla*] did *not* extend the direct consequences doctrine to that issue, or reject the basic distinction between direct and collateral consequences in determining whether a defendant's guilty plea was knowingly and voluntarily entered. In the absence of such a binding directive to do so, we decline to do so either.

287 Ga. at 397 (2) (c) (emphasis in original). In reaching this conclusion, however, the Georgia Supreme Court appeared to disapprove the application of the collateral consequences doctrine to a defendant's claim that he received ineffective assistance of counsel with respect to his guilty plea. In discussing *Padilla*, the court explained:

> Direct and collateral consequences relate to the trial court's duty to ensure that guilty pleas are knowingly and voluntarily entered as a matter

12

of Fifth Amendment due process, while ineffective assistance of counsel relates to the defense lawyer's duty pursuant to the Sixth Amendment. See *Williams*[ ]*,* 270 Ga. at 583 . . . (Fletcher, P. J., dissenting) (noting that "defense counsel's obligation to his client in entering a guilty plea is not defined by a trial court's duties in accepting a guilty plea," and "while the two concepts are interrelated, the more logical approach is to recognize that a defendant's sixth amendment claim of ineffective assistance of counsel is separate from a due process claim that a plea was not knowingly and voluntarily made").

*Padilla* confirms this analytical distinction. The U. S. Supreme Court specifically declined to rely on the direct versus collateral consequences doctrine in determining the ineffective assistance claim presented, instead applying *Strickland*'s familiar evaluation of whether counsel acted reasonably in light of the prevailing professional norms for criminal defense lawyers. This approach clarifies that defense counsel may be ineffective in relation to a guilty plea due to professional duties for the representation of their individual clients that set a standard different – and higher – than those traditionally imposed on trial courts conducting plea hearings for defendants about whom the judges often know very little. This makes both analytical and practical sense.

Id. See also *Taylor v. State*, 304 Ga. App. 878, 883 (1) (698 SE2d 384) (2010) (applying *Padilla* "to conclude that even if registration as a sex offender is a collateral consequence of a guilty plea, the failure to advise a client that his guilty plea will require registration is constitutionally deficient performance").

13

Despite the language in *Smith* that appeared to disapprove the application of the collateral consequences doctrine to an ineffective assistance claim, however, that decision did not expressly overrule *Williams v. Duffy*, 270 Ga. 580. And given that *Smith's* discussion of the applicability (or inapplicability) of the collateral consequences doctrine to a claimed Sixth Amendment violation was not central to the holding of that case,[13] we are not at liberty to construe *Smith* as invalidating *Williams*. See *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008) (statements in an opinion "concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand" are nonbinding dicta) (citation and punctuation omitted). Moreover, in the absence of a decision from our Supreme Court overruling *Williams*, we remain bound by its holding that trial counsel's failure to inform a defendant that his guilty plea would render him ineligible for parole cannot

---

[13] To be clear, we view *Smith* as holding that the distinction between direct and collateral consequences remains relevant to the determination of whether a defendant's guilty plea was entered knowingly and voluntarily and that the impact such a plea would have on a non-citizen defendant's resident status constitutes a collateral consequence.

14

constitute constitutionally deficient performance, as a matter of law.[14] See *Chin Pak v. Ga. Dept. of Behavioral Health & Dev. Disabilities*, 317 Ga. App. 486, 488-489 (731 SE2d 384) (2012) ("this Court has no authority to overrule or modify a decision made by the Georgia Supreme Court, as 'the decisions of the Supreme Court shall bind all other courts as precedents'"), quoting Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI. See also *Cargile v. State*, 194 Ga. 20, 22 (1) (20 SE2d 416) (1942) (the constitutional provision that decisions of the Supreme Court shall bind the Court of Appeals as precedents is applicable in all cases). Accordingly, we are constrained to apply *Williams* and find that because parole ineligibility is a collateral consequence of a guilty plea, Alexander cannot prove that his trial counsel performed deficiently by failing to discuss that consequence with him. We therefore affirm the trial court's order denying Alexander's motion to withdraw his guilty plea.

*Judgment affirmed. Barnes, P. J. and Boggs, J., concur.*

---

[14] Notably, in *Williams* the Supreme Court expressly overruled *Hutchison v. State*, 230 Ga. App. 143 (495 SE2d 618) (1998), in which a panel of this Court held "that [trial] counsel's failure to advise [the defendant] of parole ineligibility under OCGA § 17-10-6.1" constituted deficient performance under *Strickland* and that this Sixth Amendment violation authorized the withdrawal of the defendant's guilty plea. 270 Ga. at 582 (1).

15