297 Ga. 59
FINAL COPY

S14G1762.  ALEXANDER v. THE STATE.

THOMPSON, Chief Justice.

Appellant Calvin Alexander pled guilty to three counts of aggravated child molestation, two counts of statutory rape, three counts of child molestation and two counts of enticing a child for indecent purposes pursuant to a non-negotiated *Alford* plea.[1]   He was sentenced to 30 years on each count of aggravated child molestation with 15 years to be served in prison and the balance on probation; 15 years to serve on each of the statutory rape charges; and 15 years on each of the child molestation charges.  Thereafter, appellant moved to withdraw his guilty plea on the ground of ineffective assistance of counsel.  In this regard, appellant asserted trial counsel failed to advise him he would not be eligible for parole (because he was sentenced as a recidivist) and, if he had been so advised, he would not have pled guilty.  At the hearing upon appellant's motion, trial counsel testified he had no recollection of having discussed parole eligibility with appellant.

---

[1] See North Carolina v. Alford, 400 U. S. 25 (91 SCt 160, 27 LE2d 162) (1970).

The trial court denied appellant's motion to withdraw his guilty plea, and the Court of Appeals affirmed,[2] holding it was constrained by this Court's ruling in Williams v. Duffy, 270 Ga. 580 (513 SE2d 212) (1999), that ineligibility for parole has a collateral effect on a criminal sentence and that, therefore, a lawyer's failure to inform his client about parole eligibility cannot constitute deficient performance as a matter of law.  This Court granted appellant's petition for a writ of certiorari and posed this succinct question:  Whether Williams v. Duffy remains good law, see Padilla v. Kentucky, 559 U. S. 356 (130 SCt 1473, 176 LE2d 284) (2010), Smith v. State, 287 Ga. 391 (697 SE2d 177) (2010), and Taylor v. State, 304 Ga. App. 878 (698 SE2d 384) (2010)?

In Williams v. Duffy, the defendant was charged with several offenses, including armed robbery.  Pursuant to a negotiated plea bargain, the defendant pled guilty to armed robbery and received a 15-year sentence.  Thereafter, the defendant filed a petition for habeas corpus, alleging his attorney rendered ineffective assistance.  The habeas court set aside the defendant's conviction, finding the defendant's attorney was ineffective because he failed to advise the

_____

[2] Alexander v. State, 328 Ga. App. 300 (761 SE2d 844) (2014).

2

defendant that, pursuant to OCGA § 17-10-6.1, he would be ineligible for parole and would be required to serve the entire 15-year sentence in jail. The warden appealed, and a majority of this Court reversed, reasoning that parole eligibility or ineligibility only has a collateral effect on a defendant's sentence and that an attorney's failure to advise a defendant of a collateral consequence cannot constitute ineffective assistance.

We hold today that Williams is no longer good law and that it, and its progeny, must be overruled. We begin our analysis with the Supreme Court's decision in Hill v. Lockhart, 474 U. S. 52 (106 SCt 366, 88 LE2d 203) (1985). In that case, petitioner pled guilty in state court to first degree murder and theft of property. He subsequently sought federal habeas relief on the ground of ineffective assistance of counsel, alleging his attorney misinformed him he would become eligible for parole after serving one-third of his sentence when, in fact, he was a "second offender" and was required to serve one-half of his sentence before becoming eligible for parole. The district court denied habeas relief, ruling that, even if petitioner's attorney misled petitioner about parole eligibility, petitioner's plea was not rendered involuntary. The Court of Appeals for the Eighth Circuit affirmed, holding that parole eligibility is a collateral, not

3

direct, consequence of a guilty plea and, therefore, a defendant need not be informed of it. On certiorari, the Supreme Court affirmed. However, unlike the Court of Appeals, the Supreme Court did not examine counsel's misadvice with a "direct or collateral effects" lens. Instead, it used the two-part Strickland v. Washington[3] test, held that it "applies to challenges to guilty pleas based on ineffective assistance of counsel," and concluded that the petitioner was unable to satisfy the second, "prejudice" prong of Strickland. In reaching that conclusion, the Court found it "unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel." Hill, supra at 60.

Williams cited Hill for the proposition that "[t]here is no constitutional requirement that a defendant be advised of . . . collateral consequences in order for his guilty plea to be valid." Williams, supra at 581. However, although Hill espoused that proposition, it is clear that it was made in the context of a federal court's obligation to ensure that a defendant's plea is voluntary and intelligent. As noted above, Hill proposed an altogether different approach —  the

---

[3] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

4

Strickland v. Washington test — to evaluate the performance of counsel who incorrectly advises a defendant about parole eligibility. In the words of the high Court: "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' [Cit.]" Hill, supra at 56.

In his dissenting opinion in Williams, Presiding Justice Fletcher, joined by then Chief Justice Benham, recognized the majority's error:

> The majority equates "constitutionally ineffective assistance" with the deficiency prong. However, deficient performance is only "constitutionally ineffective" when it causes prejudice. In looking at the deficiency prong separately, I would hold that defense counsel's obligation to his client in entering a guilty plea is not defined by a trial court's duties in accepting a guilty plea. While the two concepts are interrelated, I am persuaded that the more logical approach is to recognize that a defendant's sixth amendment claim of ineffective assistance of counsel is separate from a due process claim that a plea was not knowingly and voluntarily made.

Id. at 583.

This Court subsequently distinguished between cases in which, like Williams, counsel failed to inform a criminal defendant of the collateral consequences of a plea, and those in which counsel affirmatively misinformed

a defendant of such consequences. In the latter situation, we analyzed counsel's performance with a Sixth Amendment, Strickland, approach. See, e.g., Smith v. Williams, 277 Ga. 778 (596 SE2d 112) (2004) (ineffective assistance claim arising from counsel's incorrect advice concerning parole eligibility must be determined by two-prong Strickland test); Rollins v. State, 277 Ga. 488 (591 SE2d 796) (2004) (habeas court erred by failing to differentiate between counsel's failure to advise client of collateral consequence and his affirmative misrepresentation of such consequence). Nevertheless, we continued to apply Williams when counsel completely failed to advise a client concerning the collateral consequences of a plea agreement. See, e.g., Ellis v. State, 272 Ga. 763 (534 SE2d 414) (2000).[4]

More recently, Padilla required us to rethink our course. In that case, counsel erroneously assured his client that a guilty plea would not lead to his

---

[4] We now question whether these different approaches were ever appropriate. As the Supreme Court observed in Padilla, supra at 370, "there is no relevant difference 'between an act of commission and an act of omission' in this context." Moreover, to limit an ineffective assistance claim to "affirmative misadvice" gives defense counsel "an incentive to remain silent on matters of great importance, even when answers are readily available. Silence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement.'" Id. In view of our decision to overrule Williams, we need not dwell on this point further.

6

deportation. Eschewing a direct versus collateral consequence analysis, the

Supreme Court held that the Sixth Amendment's guarantee of effective

assistance of counsel protects a defendant from erroneous advice about

deportation, id. at 366, and that a defendant establishes deficient performance

under Strickland when he shows that counsel failed to accurately advise him

about the automatic deportation consequences of a guilty plea and those

consequences could have been determined easily from reading the removal

statute.[5]

In Smith v. State, 287 Ga. 391 (697 SE2d 177) (2010), we shouldered the

Supreme Court's decision in Padilla and took aim at the direct versus collateral

distinction set forth in Williams:

> Direct and collateral consequences relate to the trial court's
> duty to ensure that guilty pleas are knowingly and voluntarily
> entered as a matter of Fifth Amendment due process, while

---

[5] The State posits that the holding in Padilla is a narrow one; that it pertains only to deportation consequences; and that defense attorneys would be unduly burdened if the holding in Padilla were to implicate a myriad of potential consequences stemming from guilty pleas. We disagree. Although the majority in Padilla took pains to circumscribe its ruling, it plainly stated that "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue *like* deportation, and the failure to do so 'clearly satisfies the first prong of the Strickland analysis.'" Id. at 371 (emphasis supplied). Thus, the Supreme Court made it clear that misadvice about serious collateral consequences other than deportation, such as parole ineligibility (see id. at 387, n. 4 (Alito, J., concurring in judgment)), can constitute a constitutional violation.

7

ineffective assistance of counsel relates to the defense lawyer's duty pursuant to the Sixth Amendment. See Williams v. Duffy, 270 Ga. at 583 (Fletcher, P. J., dissenting) (noting that "defense counsel's obligation to his client in entering a guilty plea is not defined by a trial court's duties in accepting a guilty plea," and "[w]hile the two concepts are interrelated, . . . the more logical approach is to recognize that a defendant's sixth amendment claim of ineffective assistance of counsel is separate from a due process claim that a plea was not knowingly and voluntarily made"). Padilla confirms this analytical distinction. The U. S. Supreme Court specifically declined to rely on the direct versus collateral consequences doctrine in determining the ineffective assistance claim presented, instead applying Strickland's familiar evaluation of whether counsel acted reasonably in light of the prevailing professional norms for criminal defense lawyers. This approach clarifies that defense counsel may be ineffective in relation to a guilty plea due to professional duties for the representation of their individual clients that set a standard different - and higher - than those traditionally imposed on trial courts conducting plea hearings for defendants about whom the judges often know very little. This makes both analytical and practical sense.

Id. at 397. See also Lafler v. Cooper, __ U. S. __ (132 SCt 1376, 182 LE2d 398) (2012) (ineffective assistance of counsel claim stemming from rejection of plea offer should be addressed by applying Strickland and not by inquiring whether rejection of plea was knowing and voluntary).

Our decision in Smith v. State made it clear that Williams stood on shaky ground. However, we did not overrule Williams at that time; nor did we firmly decide whether a direct versus collateral consequence analysis remains viable

8

in the context of an ineffective assistance of counsel claim.

Shortly after our decision in Smith v. State, the Court of Appeals held that counsel's failure to advise his client that a guilty plea will require registration as a sex offender constitutes deficient performance. Taylor v. State, supra. In Taylor, the defendant entered a guilty plea to two counts of child molestation pursuant to a negotiated plea agreement. He was sentenced to ten years, one in confinement and nine on probation. When the defendant met with his probation officer, he was advised that, upon his release from confinement, he would be required to register as a sex offender. Thereupon, the defendant moved to withdraw his guilty plea. Following a hearing, the trial court denied the defendant's motion, reasoning that the sex offender registration requirement was a collateral consequence and that counsel's failure to inform his client of that consequence could not constitute ineffective assistance of counsel. The Court of Appeals reversed. Relying on Padilla, the appellate court determined that a direct versus collateral consequence distinction does not control the scope of reasonable professional assistance required under Strickland. Thus, the appellate court concluded, "even if registration as a sex offender is a collateral consequence of a guilty plea, the failure to advise a client that his guilty plea

will require registration is constitutionally deficient performance." Taylor, supra at 882-883.

We agree with the Strickland analysis set forth in Taylor[6] and hold that, whether a guilty plea gives rise to a direct or collateral consequence, when a criminal defendant seeks to withdraw a guilty plea on the ground of ineffective assistance of counsel, the ineffective assistance claim must be evaluated under the two-prong test set forth in Strickland v. Washington. Accordingly, as noted above, Williams must be overruled.

We hasten to add that counsel's failure to offer advice concerning a collateral consequence will not rise to the level of constitutional deficiency in every instance. Rather, our courts should weigh a deficient performance claim by looking to

> the practice and expectations of the legal community: "The proper
>
> measure of attorney performance remains simply reasonableness
>
> under prevailing professional norms." [Strickland.] We long have

---

[6] We do not, however, necessarily agree with Taylor that the failure to advise a defendant about sex offender registration is a drastic measure or penalty intimately related to the criminal process. A decision along those lines must await another day.

10

recognized that "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . ." [Cits.] Although they are "only guides," [cit.] and not "inexorable commands," [cit.], these standards may be valuable measures of the prevailing professional norms of effective representation[.] . . .

Padilla, supra at 366-367. In addition to professional guidelines, our courts can look to these factors when weighing advice concerning a collateral consequence: (1) whether the collateral consequence is intimately related to the criminal process and is "nearly an automatic result" flowing from the conviction; (2) whether the consequence is a "drastic measure" or a penalty with harsh ramifications for the client; and (3) whether the law imposing the consequence is "succinct, clear and explicit." Padilla, supra at 365-369; Taylor v. State, supra at 882.

When it comes to parole eligibility, we conclude that an attorney's failure to inform his or her client that he or she would be ineligible for parole as a recidivist for the entirety of a lengthy prison sentence is constitutionally

11

deficient performance. We reach this conclusion for several reasons. First, we note that the recidivist statute is, and has been, a prominent feature of our criminal justice system — anyone who is subject to it should be informed accurately about its consequences. See Commonwealth v. Pridham, 394 SW3d 867, 878 (Ky. 2012). See also National Legal Aid and Defender Association (NLADA) Performance Guideline for Criminal Defense Representation 6.4 (prior to entry of plea, counsel must ensure that the client "fully and completely understands . . . the maximum punishment, sanctions and other consequences the accused will be exposed to by entering the plea"); American Bar Association (ABA) Standards for Criminal Justice, Pleas of Guilty 14-3.2 (f) ("To the extent possible, defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea."); Uniform Superior Court Rules 33.8 (C) (3), (4) (trial judge should not accept guilty plea without first informing defendant of maximum possible sentence and any mandatory minimum sentence). Moreover, the statute in question, OCGA § 17-10-7 (c), is "succinct, clear and explicit" and it applies automatically upon an offender's conviction as a recidivist. Finally, parole ineligibility is a drastic

12

penalty enacted to ensure that a criminal offender serves his or her entire sentence behind bars. See Commonwealth v. Pridham, supra.

When he entered his plea, appellant was faced with the possibility of imprisonment for many years, and he was faced with the potential that he would be sentenced as a recidivist and made ineligible for parole for the entirety of his long sentences. In these circumstances, we hold that appellant was entitled to advice from his lawyer about parole ineligibility. However, although appellant presented evidence showing counsel failed to advise him he would be ineligible for parole, the trial court did not make a finding in that regard. Indeed, such a finding would have been unnecessary as long as Williams v. Duffy, supra, was good law. Because we now overrule Williams, it is incumbent upon the trial court to again evaluate appellant's motion to withdraw his guilty plea with the two-prong Strickland test. Accordingly, we reverse and remand for the trial court to determine whether defense counsel performed deficiently and, if so, whether the deficient performance prejudiced appellant. See Encarnacion v. State, 295 Ga. 660, 664 (763 SE2d 463) (2014). To meet the prejudice prong in the guilty plea context, appellant must demonstrate there is a reasonable probability that, assuming counsel failed to inform him he would be ineligible

13

for parole, he would not have entered a guilty plea and would have insisted on going to trial. Id.

Judgment reversed and case remanded with direction. All the Justices concur.

Decided May 11, 2015.

Certiorari to the Court of Appeals of Georgia – 328 Ga. App. 300.

Kenneth D. Kondritzer, Tamara N. Crawford, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lenny I. Krick, Assistant District Attorneys, for appellee.