310 Ga. 175
FINAL COPY

S20A0767.  SWANN v. THE STATE.

BOGGS, Justice.

Appellant Dakota Swann challenges his 2014 convictions for murder and other crimes in connection with the shooting death of Shannon Williams. Appellant argues that trial counsel was constitutionally ineffective for failing to fully investigate an earlier shooting incident involving Appellant or to utilize it at trial and for not discussing the parole implications of the State's plea offer. We disagree and affirm.[1]

---

[1] Williams was shot on January 9, 2008, and succumbed to his injuries nine days later. After the investigation was finally closed, on August 13, 2013, a Fulton County grand jury indicted Appellant for murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a felon (Count 3), aggravated assault with a deadly weapon (Count 4), possession of a firearm by a convicted felon (Count 5), and possession of a firearm during the commission of a felony (Count 6). At a trial from November 10 to 13, 2014, the jury acquitted Appellant on Counts 2 and 4 but found him guilty on all other counts. On November 13, 2014, the trial court sentenced Appellant to life in prison with the possibility of parole for malice murder (Count 1) and five years consecutive for possession of a firearm during the commission of a felony (Count 6), and purported to merge Counts 3 and 5 with Count 1.  The State does not challenge the merger of the

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On the evening of January 8, 2009, Demarcus Williams ("Demarcus") and Williams were walking down the street when a group of men appeared. Without warning, one of the men produced a revolver and shot Williams in the head. Williams fell to the ground, and Demarcus ran back to his sister's house nearby, where he woke up Williams's cousin John Ridley. Demarcus informed Ridley that Williams had been shot, and Ridley immediately ran outside and toward the scene of the shooting. As Ridley approached the scene, two or three minutes after the shooting, he saw Appellant fleeing the scene holding a handgun.

Sylvia Smith was walking in the same area when she heard gunshots. Her walking companion tackled her to the ground to

<hr>

felon-in-possession count. See *Dixon v. State*, 302 Ga. 691, 698 (808 SE2d 696) (2017).The felony murder count (Count 3) was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 373 (434 SE2d 479) (1993). Appellant filed a timely motion for new trial with trial counsel on November 24, 2014, which he amended with new counsel on June 25, 2018, and again on April 17, 2019. After an evidentiary hearing, the trial court denied the motion on November 6, 2019. Appellant filed a timely notice of appeal, and the case was docketed in this Court to the April 2020 term and submitted for a decision on the briefs.

protect her. When Smith looked up, she saw Appellant, whom she knew from the neighborhood, walking away from the scene "real, real fast."

Williams was transported to the hospital but succumbed to his injuries nine days later. In the days after the shooting, investigators showed photographic lineups to Demarcus and Smith, both of whom identified Appellant. In June 2009, Demarcus Collins, a state prison inmate, contacted the police via letter, claiming that he knew Appellant and that Appellant had confessed to shooting a man in the head with a revolver, explaining that he did so because the man had previously shot him. In June 2013, investigators finally concluded that they had exhausted all available leads and arrested Appellant.

1. Although Appellant does not challenge the sufficiency of the evidence to sustain his convictions, we have — consistent with our current practice in murder cases — reviewed the evidence presented at trial, and we conclude that a rational trier of fact could have found Appellant guilty beyond a reasonable doubt of the crimes for which

he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Appellant asserts that his trial counsel rendered constitutionally ineffective assistance for failing to properly investigate a February 2007 shooting incident and use it at trial and for failing to discuss with Appellant parole eligibility associated with the State's offered plea deal. We disagree.

To prevail on this sort of ineffective assistance of counsel claim, Appellant must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). An appellant must satisfy both prongs of the *Strickland* test, and if one prong fails, "it is not incumbent upon this Court to examine the other prong." *Smith v. State*, 296 Ga. 731, 733 (770 SE2d 610) (2015) (citation and punctuation omitted). To establish

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

4

deficient performance, an appellant "must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in the light of all the circumstances and prevailing norms. Id. (citation and punctuation omitted). To establish prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous. *Smith*, 296 Ga. at 733.

(a) Appellant asserts that his trial counsel rendered constitutionally ineffective assistance for first failing to fully investigate a February 2007 shooting incident involving Appellant and then failing to use that information at trial to rebut the State's theory of the case, namely that Appellant murdered Williams in retaliation for having been shot by him in 2007. Specifically, Appellant argues that had trial counsel properly investigated the

5

February 2007 incident, he would have discovered that Appellant had helped the State convict another person, Tyrone Smith, for that shooting, rebutting the State's theory and undermining its credibility. Even assuming that trial counsel's failure to fully investigate and introduce the relevant evidence was deficient, Appellant has failed to prove prejudice.

During opening statements, the State laid out its theory for Appellant's motive for shooting Williams. Noting that Appellant was shot in the leg in February 2007, the State explained that "[t]his case is about revenge. This case is about getting the guy who shot [him] in the leg." During the trial, however, it became evident that Appellant had been shot twice in 2007 — once in February and once in November — and that he had been shot once in the leg and once in the buttocks. The testimony as to which body part had been shot on which date, however, varied throughout the trial.

Ridley testified that Appellant had previously been shot on the same day he had a conflict with Williams' brother, but did not give a date or identify a body part. Collins' June 2009 letter stated that

6

Appellant had told him that Appellant murdered someone who had "shot [him] in the leg." The case's lead investigator first testified that he believed Appellant had been shot in the leg in February 2007 but immediately clarified that the shooting at issue had occurred in November 2007. On cross-examination by trial counsel, the investigator reiterated that he knew Appellant had been shot twice in 2007, once in the leg in November and once in the buttocks earlier in February. But Appellant's mother testified that Appellant was shot in the leg the first time and that the second time he was shot in the buttocks.

In closing arguments, the State reiterated its theory that the "case is about revenge," but noted that Appellant "apparently got shot twice" in 2007. Changing its theory slightly from its opening statement, the State argued that Appellant was going to "get his revenge" not by shooting his attacker "in the leg or in the buttocks," but "in the head."

At the motion for new trial hearing, Appellant's trial counsel explained his efforts to investigate the February 2007 shooting

incident. While reviewing discovery, he found a police report concerning that incident, showing that Appellant had been shot. He discussed the incident with Appellant but could not recall whether Appellant had provided the name of the man who shot him. During that conversation, Appellant told trial counsel that Appellant had helped in the prosecution of the man who shot him. Trial counsel said that he would raise this at trial. Counsel testified that he met multiple times with Appellant during the course of preparing for trial, including just before the trial began. Trial counsel was aware that Appellant had been shot twice in 2007 and admitted that he was aware a man was prosecuted for the February 2007 shooting at the time of trial, that the case would have been a matter of public record, and that it was not a strategic decision to fail to investigate further.

As to his efforts to rebut the State's theory of motive, trial counsel pointed to cross-examination of the lead investigator. Trial counsel asked the investigator whether he was aware that Appellant had "cooperated with the police and helped put somebody in prison"

8

for the time "he was shot in the butt." The officer explained that he did not have that information. Trial counsel then asked, "if [Appellant] was going to cooperate with the police once, why wouldn't he do it again?" The officer responded that he did not know. Trial counsel also elicited testimony from Appellant's mother regarding Appellant's cooperation with the police investigation in the first shooting. Also of note, at the motion for new trial hearing, while Appellant testified that he had known the February 2007 shooter to be Smith, he claimed that he did not know who shot him in November 2007.

Assuming without deciding that trial counsel's investigation and rebuttal efforts were deficient, Appellant has failed to prove that he was prejudiced by trial counsel's failure to introduce court documents that showed Smith had been convicted for shooting him in February 2007. It is unclear from the record whether the State's theory of motive was predicated on one shooting or the other or both. The fact that the documents would have shown that Smith was the shooter in the February 2007 incident, however, did not eliminate

9

the possibility that Appellant had other motives for murdering Williams, including retaliation for the November 2007 shooting.

Further, the admission of these documents would have been largely cumulative of other evidence presented to the jury because trial counsel had already elicited testimony from Appellant's mother that Appellant had been shot in February 2007 and that, rather than retaliate against the perpetrator, he had helped police prosecute and put the shooter in prison, suggesting that he would not have shot Williams in retaliation for the February 2007 shooting for which he knew another person had been convicted. See *Eller v. State*, 303 Ga. 373, 384 (811 SE2d 299) (2018) (failure to admit no-contact order stemming from prior domestic incident not prejudicial because it was cumulative of other witness testimony); *Gibson v. State*, 277 Ga. 486, 487 (591 SE2d 800) (2004) (similar).

Finally, the State presented three eyewitnesses who placed Appellant either at or running from the scene of the murder carrying a gun. In light of trial counsel's mitigating efforts and the strong evidence of Appellant's guilt — which is not predicated on proof of

motive, see *Cook v. State*, 255 Ga. 565, 568 (340 SE2d 843) (1986) ("[M]otive is not an element of the offense of murder.") — it is not reasonably probable that the outcome of the case would have been different but for trial counsel's performance. See *Grant v. State*, 305 Ga. 170, 176 (824 SE2d 255) (2019) (counsel's alleged deficiency not prejudicial in light of evidence of guilt).

(b) Appellant also claims that his trial counsel was constitutionally ineffective for failing to inform him of the parole implications of the State's plea offer. We disagree.

Prior to trial, the State offered Appellant a plea deal in which he would serve 25 years for voluntary manslaughter, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Appellant and trial counsel discussed the offer for approximately two to three minutes, during which time trial counsel informed Appellant that if he were convicted of murder he would receive a life sentence, but trial counsel did not discuss any aspect of parole with Appellant. Appellant rejected the offer. The trial court twice asked Appellant to confirm his rejection of the offer,

11

which he did. At the motion for new trial hearing, Appellant explained that he refused the offer because he believed that if he was convicted of murder and given a life sentence he would only have to serve thirty years in prison, only five more years then the plea offer. He never said that trial counsel misinformed him about parole.

Under our precedent, prior to 2015, counsel was not required to advise a defendant of parole eligibility with regard to a plea agreement. See *Williams v. Duffy*, 270 Ga. 580, 581 (513 SE2d 212) (1999), overruled by *Alexander v. State*, 297 Ga. 59, 64 (772 SE2d 655) (2015). Given the clear holding in *Williams*, it was not professionally deficient for counsel to either fail to predict the future or to seek to create new law. See *Walker v. State*, 306 Ga. 579, 583 (832 SE2d 420) (2019) ("In making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law . . . . [W]hen addressing a claim of ineffectiveness of counsel, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial." (citation and punctuation omitted)).

As such, Appellant's trial counsel cannot be held constitutionally ineffective for failing to do something he was not required to do at the time.[3]

*Judgment affirmed. All the Justices concur, except Nahmias, P. J., who concurs in judgment only in Division 2 (b), and Warren, J., not participating.*

Decided October 19, 2020.

Murder. Fulton Superior Court. Before Judge Adams.
*Steven E. Phillips, Anna J. Kurien*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Aslean Z. Eaglin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.

---

[3] Appellant also challenges the trial court's exclusion of witness testimony at the motion for new trial hearing as to the hypothetical parole eligibility of Appellant had he accepted the plea agreement. However, given that Appellant only offered this evidence to substantiate the ineffectiveness claim that we have found lacking in merit as a matter of law, this issue is moot.