**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 6, 2016**

# In the Court of Appeals of Georgia

A16A0660. COLEMAN v. STATE.

BARNES, Presiding Judge.

Walter Coleman appeals from the denial of his motion to withdraw a non-negotiated guilty plea, arguing that the trial court's denial was a manifest abuse of discretion. We disagree and affirm.

Coleman pled guilty to influencing a witness and was sentenced to the maximum sentence of ten years, with the possibility of parole. During three plea hearings on the same day, Coleman kept changing his mind as to whether or not he should enter a guilty plea before he finally entered his plea and was sentenced.

On March 3, 2015, Coleman's case was called for trial, and Coleman indicated that he did not want to proceed to a jury trial but would rather enter a guilty plea. The trial court asked Coleman if he had a full opportunity to discuss the case with his counsel, if he was satisfied with counsel's services, and if he understood the constitutional rights he would be waiving by entering a guilty plea. Coleman

answered in the affirmative, and the trial court then informed him that the maximum penalty could be up to ten years in prison.

The State proffered a factual basis for the plea, stating that on October 19, 2013, Coleman's associate assaulted a man at a convenience store. The responding police officers observed Coleman "yelling at the victim and threatening him not to reveal the identity of [the associate] who had made the assault against him." The trial court then accepted the guilty plea, finding that it was freely and voluntarily made and supported by a factual basis. The State recommended the maximum ten year sentence because of Coleman's multiple prior convictions.

Based on an earlier negotiated offer of three years of probation, the potential ten-year sentence and the introduction of the prior convictions, Coleman's trial counsel informed the trial court that he would recommend that Coleman withdraw his plea The trial court responded that once it accepted Coleman's non-negotiated plea, Coleman "no longer ha[d] an absolute right to withdraw his plea," and that the ten-year sentence was indicated based on Coleman's five prior felony convictions, about which the State had sent a notice of evidence to be used in aggravation of sentence.[1]

---

[1] The State's notice of evidence in aggravation of sentence listed convictions for theft by taking a motor vehicle, burglary, terroristic threats, theft by taking, and cocaine possession.

When asked if Coleman had been advised of the notice of evidence to be used in aggravation of sentence and the consequences that could flow from it, Coleman's trial counsel admitted that he had had trouble contacting Coleman, so Coleman may not have been aware of the notice or the mandatory sentence that would result from entering a guilty plea to another felony. The trial court allowed Coleman the opportunity to speak with his attorney to determine if he wanted to stand on the plea or not, and told him if the State withdrew the notice of evidence in aggravation of sentence, he would sentence Coleman to 10 years with three to serve in custody and the balance to serve on probation. Coleman decided to withdraw his plea and to proceed with a trial.

During the second colloquy a half an hour later, Coleman told the trial court that he was unsatisfied with his trial counsel, stating that there were "a lot of things I wanted him to do, but due to the circumstances, I want to move forward with the case." Coleman indicated that he wanted to enter a plea of guilty. The trial court again went over the constitutional rights Coleman would waive if he entered a guilty plea. But when the trial court then asked Coleman, "How do you plead?," Coleman responded, "Not guilty," and said he wanted to go to trial. The parties then proceeded to select a jury.

During the third colloquy, after the jury had been selected and court resumed after lunch, Coleman told the trial court that he had again decided to enter a guilty plea. For a third time, the trial court reviewed the constitutional rights Coleman would waive by pleading guilty. The trial court then accepted Coleman's guilty plea as intelligently and voluntarily entered. The State decided to present only two of the five prior convictions it had listed in its notice of evidence to be used in aggravation of sentence so that Coleman could possibly be paroled under OCGA § 17-10-7 (a). The trial court then sentenced Coleman to ten years under that code section.

Nine days later, on March 12, 2015, Coleman moved to withdraw his guilty plea, alleging among other things that his counsel had been ineffective. Following a hearing during which Coleman was represented by new counsel and his trial counsel did not appear, the trial court denied the motion. Coleman filed a timely appeal.[2]

1. Coleman contends that the trial court erred by denying his motion to withdraw his guilty plea because his trial counsel was ineffective. We disagree.

---

[2]As an initial matter, we note that Coleman's brief fails to comply with our rules. He enumerates the same issues in different errors and argues error different from those he initially enumerates. "[A] party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form." *Pruitt v. State*, 323 Ga. App. 689 (1) (747 SE2d 694) (2013). See Court of Appeals Rule 25 (c) (1) ("The sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly.")

"After sentence is pronounced, whether to allow the withdrawal of a guilty plea lies within the trial court's sound discretion, and we review the trial court's decision for manifest abuse of that discretion." *Pruitt*, 323 Ga. App. at 690 (2). Coleman alleged his trial counsel was ineffective because he was unprepared, unreachable, and did not fully explain to Coleman the nature of the guilty plea and maximum sentence.

> Because [Coleman's] motion was based on an ineffective assistance of counsel claim, the trial court was required to apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), to determine whether counsel's performance was deficient, and, if so, whether [Coleman] was prejudiced by the deficiency.

*Pruitt*, 323 Ga. App. at 690 (2). "If the defendant is unable to satisfy either the deficiency or prejudice prong of the test, his ineffective assistance claim fails."(Citations and punctuation omitted) *Taylor v. State*, 304 Ga. App. 878, 880-881 (698 SE2d 384) (2010). See also *Wright v. State*, 298 Ga. 124, 125 (2) (779 SE2d 660) (2015) (defendant who seeks to withdraw guilty plea must show both deficient performance *and* a reasonable probability that, but for counsel's errors, defendant would have insisted on trial). When this court reviews a trial court's denial of a

5

motion to withdraw a guilty plea, "the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." (Citation and punctuation omitted.) *Alexander v. State*, 297 Ga. 59, 61 (772 SE2d 655) (2015).

Under the first prong of the *Strickland* test, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and "without trial counsel's testimony, his actions are presumed strategic." *Freeman v. State*, 282 Ga. App. 185, 188 (2) (638 SE2d 358) (2006); *Earley v. State*, 310 Ga. App. 110, 112 (712 SE2d 565) (2011). Coleman asserts that his trial counsel's performance was deficient because counsel did not adequately prepare for the trial, failed to communicate with Coleman, and failed to inform him of any similar transaction and recidivism evidence.

However, during the initial plea colloquy, Coleman's trial counsel stated that he tried multiple times to contact Coleman but was unable to reach him. Trial counsel said that he had called and left messages for Coleman but had "never received any response in my communications from him . . . and I ha[d] no way of verifying whether or not he got the communication." Additionally, the record reflects throughout the three colloquies that the trial court gave Coleman the opportunity to

6

consult with his trial counsel before deciding to enter his plea. Moreover, Coleman also made several conflicting statements at the hearing on his motion to withdraw his guilty plea, first telling the trial court that he had never talked to his trial counsel, but then conceding that the trial counsel had represented him in two prior court appearances. Coleman also testified that the trial counsel would call his uncle, who would then pass along the information to Coleman.

Regarding Coleman's contention that trial counsel was deficient for failing to adequately inform him about the State's use of similar transactions in aggravation of his sentence, at the hearing on the motion to withdraw guilty plea, the trial court informed Coleman that it had not considered any similar acts in sentencing because there was no pre-trial determination as to their admissibility. Thus, trial counsel was not deficient in this regard.

In its order denying Coleman's motion to withdraw his guilty plea, the trial court found that Coleman's "sworn testimony at the time of the guilty plea was that he had a full opportunity to talk with his lawyer about his case, and that he told his lawyer everything he knew to tell him about the facts of the case." The court then held that Coleman's plea "was entered into knowingly, intelligently, and voluntarily . . . with a full understanding of what the plea connoted and of its consequences."

7

"As the final arbiter of the facts, the trial court was authorized to reject [Coleman's] self-serving testimony during the hearing on his motion to withdraw the plea and find that he entered it knowingly and voluntarily." *Young v. State*, 267 Ga. App. 91, 92 (598 SE2d 840) (2004). Further, Coleman has not described any evidence or defenses that could have been presented at trial if his plea counsel had spent more time with him. *Pruitt*, 323 Ga. App. at 693 (2) (c). "Credibility determinations are within the purview of the trial court and the court's factual findings will not be disturbed unless clearly erroneous. Despite appellant's stated motivation [for pleading guilty instead of going to trial], he fails to demonstrate coercion or that his decision to enter the plea was not voluntarily made." (Citations omitted.) *McGuyton v. State*, 298 Ga. 351, 355 (1) (b) (782 SE2d 21) (2016).

Because Coleman failed to meet his burden of showing that his trial counsel's performance was deficient, this Court need not address the prejudice prong. *Horne v. State*, 333 Ga. App. 353, 353 (1) (773 SE2d 467) (2015). Accordingly, the trial court did not abuse its discretion when it denied Coleman's motion to withdraw his guilty plea based on an ineffective assistance of counsel claim. See *Gresham v. State*, 300 Ga. App. 158, 163 (684 SE2d 336) (2009) (affirming trial court's denial of

8

motion to withdraw guilty plea based on assertion plea counsel did not spend enough time on the case).

2. Next, Coleman contends that the trial court erred in denying him a full hearing on his ineffectiveness claim. He argues that to meet the first prong of *Strickland*, his trial attorney had to be present and testify at the motion to withdraw guilty plea hearing. Coleman asserts that the trial court should have stayed the motion to withdraw guilty plea hearing because his trial attorney's absence denied him the right to a full due process hearing and he "would not have plead guilty if he knew there was a risk of getting any prison time without parole."

Coleman was not sentenced to a term without the possibility of parole. He was sentenced under OCGA § 17-10-7 (a), which does not prevent the Board of Pardons and Paroles from granting Coleman parole at some point during his sentence. Further, during the plea hearing, the trial court informed Coleman that it was not the court's "intention that [he] not be eligible for parole,"and later, when Coleman asked if he was eligible for parole, the trial court said that parole "will be up to the Parole Board." The trial court also gave Coleman and his trial counsel ample time to discuss the consequences of the State's notice of evidence to be used in aggravation of sentence. The State withdrew all but two of the four counseled felony convictions

9

included in its notice of evidence to be used in aggravation of sentence, specifically so that Coleman could be sentenced as a recidivist under OCGA § 17-10-7 (a) and receive a split sentence, with some portion to be served on probation. If the State had insisted on presenting all four convictions, OCGA § 17-10-7 (c) would have required the court to sentence him to ten years without the possibility of parole.

Finally, during the first plea colloquy, after the trial court accepted Coleman's guilty plea and the State recommended ten years to serve, Coleman expressed surprise that the recommended sentence of ten years to serve without parole was much higher than he thought it would be. His trial counsel told the trial court that Coleman had not been fully aware of the notice of evidence to be used in aggravation of sentence until moments before, and Coleman told the court that he had entered his plea expecting the State to recommend the three years probation it had originally offered. The trial court explained the mandatory minimum sentence it would be constrained to give Coleman based on the four certified felony convictions the State had introduced, which was ten years to serve without the possibility of parole. Coleman indicated that he understood the explanation and that he did not have any further questions. After the explanation, the trial court allowed Coleman to withdraw his initial guilty plea and gave him the opportunity to discuss his case further with his trial counsel. When

10

Coleman returned to the court, the trial court asked if his trial counsel had "explained to [him] what the statute says and what it means?" Coleman responded that he understood and wanted to go to trial.

After the jury was struck, when Coleman indicated again that he wanted to plead guilty, the trial court told him that it would be a blind plea, that there would not "be any guarantees whatsoever," and the court would entertain the plea, hear argument, and decide what the sentence would be. After the court again accepted Coleman's guilty plea, the State again recommended ten years to serve, but withdrew two of the four counseled felonies to give the trial court the discretion to probate some portion of the sentence if it wished to. The court declined to probate any of the required ten-year sentence, but did sentence Coleman under OCGA § 17-10-7 (a) as if this were his third felony, rather than under OCGA § 17-10-7 (c) as if this were his fifth felony, so that he is eligible for parole, in the discretion of the Board.

Despite his assertion that his trial counsel's absence from the motion hearing denied him a fair and proper determination of his ineffectiveness claim, Coleman fails to indicate what additional information his trial counsel could have added to meet his "burden of showing that, had it not been for his attorney's deficient representation, a reasonable probability exists that he would have insisted on a trial." (Citation and

11

punctuation omitted.) *Howard v. State*, 274 Ga. App. 861, 861-862 (619 SE2d 363) (2005).

At the hearing on the motion to withdraw his guilty plea, Coleman's new counsel informed the trial court that Coleman's trial counsel was unavailable but that he "planned to go forward . . . and get started with this proceeding." He then indicated that he would later request a stay so that the trial attorney could be "here at motions." The trial court asked Coleman's new counsel what additional information the trial counsel could testify to that would be favorable to Coleman, and appellate counsel had no response. The transcript also indicates that appellate counsel did not later approach the trial court and indicate that Coleman wanted to stay the proceedings.

This enumeration fails.

3. Coleman also contends that the trial court erred by participating in plea negotiations and that it abused its discretion when it failed to specifically and expressly inform Coleman what sentence he would receive if he entered a guilty plea as opposed to going to trial. However, the record shows that Coleman never raised these issues at the hearing on his motion to withdraw his guilty plea or in the actual motion, and "it is well settled that issues neither raised nor ruled on in the trial court cannot be raised for the first time on appeal." (Citation and punctuation omitted.)

*Talton v. State*, 324 Ga. App. 9, (749 SE2d 18) (2013). Further, the transcript of the plea colloquies makes it clear that Coleman was only offered a non-negotiated, blind plea, and the trial court was not required to announce its sentence before accepting the guilty plea.

4. We also find no merit to Coleman's argument that the trial court's denial of Coleman's motion to withdraw his guilty plea was a manifest injustice. Based on our conclusion that the trial court did not err in finding that trial counsel was not ineffective, and Coleman's waiver of the remaining arguments, this enumeration also fails. See *Williams v. State*, 318 Ga. App. 744, 745 (734 SE2d 745) (2012) ("The test for manifest injustice will by necessity vary from case to case, but it has been said that withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges.") (citations and punctuation omitted.)

*Judgment affirmed. Boggs and Rickman, JJ., concur.*