303 Ga. 95
FINAL COPY

S17A1419. KENNEDY v. KOHNLE.

PETERSON, Justice.

This case raises a question regarding the retroactive application of Alexander v. State, 297 Ga. 59 (772 SE2d 655) (2015), in which we held that an attorney's failure to counsel his client about parole eligibility may give rise to a claim of ineffective assistance of counsel. Teresa Lynn Kohnle pleaded guilty to felony murder in December 2010, before we decided Alexander but after the United States Supreme Court issued its opinion in Padilla v. Kentucky, 559 U. S. 356 (130 SCt 1473, 176 LE2d 284) (2010), on which we relied in deciding Alexander. Sentenced to life in prison, Kohnle filed a petition for a writ of habeas corpus, alleging that her plea counsel was ineffective in several ways, including that he failed to inform her of the parole eligibility implications of a life sentence. The habeas court granted Kohnle's petition, relying on Alexander to conclude that Kohnle's counsel had rendered ineffective assistance. The

Warden appeals, arguing that the habeas court erred in applying <u>Alexander</u> retroactively. We agree with the Warden that the habeas court erred by applying <u>Alexander</u> to find that plea counsel performed deficiently by failing to advise Kohnle that she would not be eligible for parole for 30 years if she pleaded guilty, and thus we vacate the habeas court's order. But we remand for the habeas court to consider Kohnle's claim that counsel was deficient for affirmatively misinforming her about parole eligibility matters, something we had held could support a claim of ineffective assistance long before Kohnle entered her plea. See <u>Smith v. Williams</u>, 277 Ga. 778, 778-779 (1) (596 SE2d 112) (2004).

1.  *Factual background*

Kohnle was indicted in August 2008 for malice murder, felony murder, and two counts of first degree arson in connection with the June 2007 death of her husband in a house fire. At the December 2010 plea hearing, Kohnle suggested to the trial court that she participated in setting the fire at her husband's direction as part of a financial plot and that she never intended for him to be harmed. The trial court stated that he would accept the guilty plea. Moving into sentencing, Kohnle told the court, "I just beg that you have mercy

2

on me for this, because I know I didn't mean any harm." The trial court asked

Kohnle whether she understood that he had "no control over the parole board."

Kohnle replied:

> THE DEFENDANT: I do. Is there a minimal amount of time that I have to —
> THE COURT: Yes, ma'am.
> THE DEFENDANT: — serve before I'm even —
> THE COURT: Yes, ma'am.
> [DEFENSE COUNSEL]: Your Honor, [a parole officer] has shared with me the ranges and I've discussed those with her.
> THE COURT: Okay.
> [DEFENSE COUNSEL]: I have told her many times and she's actually acknowledged in writing that we cannot give her a specific number.
> THE COURT: Well, I don't get in to giving specific numbers. I mean, there are statutes and things in the Georgia Constitution that apply to your sentence, but that's not — I'm not — you know, I can't tell you when you'll get out. That's totally up to the parole board. That's not up to me.
> THE DEFENDANT: Okay.

Sentenced to life, Kohnle later moved pro se to withdraw her guilty plea;

the trial court denied her motion as untimely, and it appears she did not appeal.

On December 8, 2014, Kohnle filed through counsel a petition for a writ of

habeas corpus. The petition alleged that Kohnle's plea counsel was ineffective

in several ways, including various alleged failures in his investigation and

preparation of the case, that he told her that accepting a plea for life with parole

was the only "viable alternative," and that he failed to advise her as to the meaning of a life sentence.

The habeas court held an evidentiary hearing in which plea counsel testified that Kohnle had acknowledged in writing that parole was entirely up to the State Board of Pardons and Paroles. Asked whether that document noted that she could not be paroled for 30 years,[1] plea counsel testified, "I think we only spoke in terms of the potential for parole ever." He also testified that it was his practice to tell clients that "the parole board can change rules at any time," adding, "the things that they consider could be changed without notice." He later added that he thought Kohnle knew she would have to spend at least 30 years in custody, based on "just my normal talks that I have with clients" and that, based on a conversation with the parole officer that he relayed to her, he was "confident that I told her correctly and adequately what she was facing with this plea." Pressed by the habeas court, plea counsel acknowledged that he did not remember a "specific conversation" in which he advised her that she would not be parole eligible for 30 years. Kohnle testified that, despite her inquiries, she

---

[1] OCGA § 17-10-6.1 (c) (1) provides (and provided at the time of Kohnle's plea) that a person sentenced to life imprisonment for felony murder shall not be eligible for parole until that person has served a minimum of 30 years in prison.

did not learn until she was transferred to prison after her plea that she had to serve 30 years before she would be eligible for parole. She testified that she would have taken her chances at trial had she known this at the time of her plea.

On February 13, 2017, the habeas court granted relief on the ground that plea counsel performed deficiently under Alexander by not informing Kohnle that she would be required to serve 30 years in prison before being eligible for parole. Citing Kohnle's testimony that she would not have pleaded guilty had she known about what the habeas court termed "the mandatory minimum sentence[,]" the habeas court found that there was a reasonable probability that, but for counsel's error, Kohnle would have gone to trial. The habeas court rejected Kohnle's claims based on counsel's allegedly urging her to accept a plea and his alleged failures of investigation and preparation. The Warden appeals, raising as her sole enumeration of error that the habeas court should not have found counsel deficient because, at the time of Kohnle's plea, counsel had no affirmative duty to advise his client about parole consequences.

2.   *Analysis*

A conviction based on a guilty plea may be challenged on the ground that defense counsel was ineffective. See Padilla, 559 U. S. at 364; Hill v. Lockhart,

5

474 U. S. 52 (106 SCt 366, 88 LE2d 203) (1985). Kohnle must show that her counsel's performance was deficient, i.e., that no reasonable attorney would have done what the lawyer did, or failed to do what the lawyer did not. See Strickland v. Washington, 466 U. S. 668, 687-689 (104 SCt 2052, 80 LE2d 674) (1984); State v. Worsley, 293 Ga. 315, 323 (3) (745 SE2d 617) (2013). She also must demonstrate prejudice, i.e., that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U. S. at 59. We adopt the habeas court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo in determining whether trial counsel performed deficiently and whether any deficiency was prejudicial. See Humphrey v. Morrow, 289 Ga. 864, 866 (717 SE2d 168) (2011).

The Warden appeals only the finding of deficient performance, and does not challenge the finding of prejudice. Moreover, the Warden does not challenge the habeas court's factual determination that counsel did not inform Kohnle that she would be required to serve 30 years in prison before being eligible for parole. The sole question raised by the Warden is whether the habeas court properly applied Alexander, a case decided more than four years after Kohnle

6

entered her plea, to find deficient performance.

(a) *The habeas court erred in applying Alexander to find plea counsel's performance deficient.*

In Alexander, we extended the United States Supreme Court's decision in Padilla to hold that an attorney's failure to offer advice concerning certain "collateral consequence[s]" of a plea may give rise to a claim of ineffective assistance of counsel under Strickland. Alexander, 297 Ga. at 62-64. In particular, we held that an attorney's failure to inform his or her client that he or she would be ineligible for parole as a recidivist for the entirety of a lengthy prison sentence is constitutionally deficient performance. Id. at 65. We based this conclusion on our observations that parole ineligibility is a "drastic penalty" and that the recidivist statute is succinct, clear, and definite and a "prominent feature of our criminal justice system" such that those subject to it should be given accurate information about it. Id. We explicitly overruled Williams v. Duffy, 270 Ga. 580 (513 SE2d 212) (1999), in which we had held that ineligibility for parole has a mere "collateral effect" on a criminal sentence and, therefore, a lawyer's failure to inform his client about parole eligibility cannot constitute deficient performance. See Alexander, 297 Ga. at 60.

The question before us today is whether <u>Alexander</u> applies retroactively to Kohnle's conviction, which became final before <u>Alexander</u> was decided. The answer to this question depends on whether <u>Alexander</u> announced a "new rule" or was instead dictated by <u>Padilla</u>. A new rule generally applies only to cases that are still on direct review when the new rule is announced. See <u>State v. Sosa</u>, 291 Ga. 734, 737 (2) (733 SE2d 262) (2012) (citing <u>Whorton v. Bockting</u>, 549 U. S. 406, 416 (127 SCt 1173, 167 LE2d 1) (2007); <u>Teague v. Lane</u>, 489 U. S. 288 (109 SCt 1060, 103 LE2d 334) (1989) (plurality opinion)).[2] "'[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.'" <u>Alford v. State</u>, 287 Ga. 105, 106 (695 SE2d 1) (2010) (quoting <u>Teague</u>, 489 U. S. at 301). A decision applies to all cases on direct and collateral review if it is merely an old rule applied to new facts. See <u>Sosa</u>, 291 Ga. at 737. For this reason, "garden-variety applications of the test in <u>Strickland</u> . . . for assessing claims of ineffective assistance of counsel do not produce new rules." <u>Chaidez v. United States</u>, 568

---

[2] A new rule may apply retroactively in a collateral proceeding if the rule is one of substantive criminal law or is "'a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" <u>Sosa</u>, 291 Ga. at 737 (quoting <u>Whorton</u>, 549 U. S. at 416). Kohnle does not argue that either of these exceptions applies here.

U. S. 342, 348 (133 SCt 1103, 185 LE2d 149) (2013).

Kohnle argues that <u>Alexander</u> did not announce a new rule but merely applied one that predated the entry of her plea. In particular, she contends that the result in <u>Alexander</u> was dictated by the Supreme Court's decision in <u>Padilla</u>. Kohnle's argument is unavailing. In <u>Williams</u>, we said that defendants have no constitutional right to be advised by counsel of mere "collateral consequences" of a guilty plea, such as parole eligibility. See <u>Williams</u>, 270 Ga. at 581-582. The Supreme Court subsequently held in <u>Padilla</u> that counsel who fails to advise a defendant that his guilty plea clearly will make him subject to deportation is constitutionally deficient, even though deportation had widely been considered to be a collateral consequence. See <u>Padilla</u>, 559 U. S. at 367-374. But <u>Padilla</u> explicitly left open the issue of whether it is ever appropriate to rely on a distinction between direct and collateral consequences to define the scope of constitutionally reasonable performance under <u>Strickland</u>. Instead, noting the severe nature of deportation and the close link between that and the criminal process, the Supreme Court found this distinction ill-suited to evaluating a <u>Strickland</u> claim concerning advice on the risk of deportation, and held that such advice is not categorically removed from the scope of the constitutional right to

9

counsel. See id. at 365-366 ("We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under Strickland. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation." (citation omitted)). And the Supreme Court subsequently made explicit the limited nature of its holding in Padilla: "Even in Padilla we did not eschew the direct-collateral divide across the board. Rather, we relied on the special 'nature of deportation' — the severity of the penalty and the 'automatic' way it follows from conviction — to show that '[t]he collateral versus direct distinction [was] ill-suited' to dispose of Padilla's claim." Chaidez, 568 U. S. at 355 (citation omitted).

It is true that in Alexander we said that our ruling in Smith v. State, 287 Ga. 391 (697 SE2d 177) (2010), issued after Padilla and before Kohnle entered her plea, "made it clear that Williams stood on shaky ground." Alexander, 297 Ga. at 63. In Smith, we differentiated between the trial court's duty to ensure that guilty pleas are knowingly and voluntarily entered as a matter of Fifth Amendment due process — to which, we said, the direct-versus-collateral-consequences distinction properly applies — and counsel's separate, higher

10

standard to advise his or her client. Smith, 287 Ga. at 397 (2) (c). But Smith did not present a claim about inadequacies in counsel's advice prior to a guilty plea, let alone one about parole eligibility advice. Indeed, as we acknowledged in Alexander, "we did not overrule Williams [in Smith]; nor did we firmly decide whether a direct versus collateral consequence analysis remains viable in the context of an ineffective assistance of counsel claim." Alexander, 297 Ga. at 63.

That task remained for this Court when it decided Alexander, more than four years after Kohnle entered her guilty plea. There — unlike the Supreme Court in Padilla — we eschewed that direct-versus-collateral-consequences distinction as a basis for determining whether counsel's failure to advise on a particular consequence of a guilty plea may give rise to an ineffective assistance claim under Strickland: "We . . . hold that, whether a guilty plea gives rise to a direct or collateral consequence, when a criminal defendant seeks to withdraw a guilty plea on the ground of ineffective assistance of counsel, the ineffective assistance claim must be evaluated under the two-prong test set forth in Strickland v. Washington." Alexander, 297 Ga. at 64. As in Padilla, in which the Supreme Court determined that a lawyer's failure to advise a client that he would be deported as a result of pleading guilty comes within the ambit of the

11

Sixth Amendment right to counsel, we decided in Alexander that the failure to advise that a guilty plea could result in parole ineligibility also would fall within the right to effective counsel. Those decisions were not the same; they involved advice on analytically different matters, and the latter ruling was stated more broadly. But their similarity is important for our retroactivity analysis.

In considering the retroactivity of its own decision in Padilla, the Supreme Court concluded that Padilla was not a mere "garden-variety application[ ]" of Strickland but instead considered and decided the threshold question of whether failure to advise on a risk of deportation is categorically removed from the auspices of Strickland as a mere collateral consequence of a conviction. See Chaidez, 568 U. S. at 348-349. Padilla's holding that Strickland applied to this particular collateral consequence thus created a new rule. Id. at 349. In the same way, our decision in Alexander — that ineffective assistance claims over failure to advise of another collateral consequence of a guilty plea, parole eligibility, "must be evaluated under the two-prong test set forth in Strickland" — created a new rule.[3] Only after we made that threshold determination, answering an

_____

[3] We note that Alexander did not extend Padilla to advice about parole generally, but addressed advice regarding a statute under which the defendant was automatically ineligible for parole for some specific time after conviction. See 297 Ga. at 65.

12

unsettled question that was hardly a garden-variety application of <u>Strickland</u> (or

<u>Padilla</u>), did we proceed to consider whether counsel's failure to advise on

parole eligibility constituted deficient performance under <u>Strickland</u>. See

<u>Alexander</u>, 297 Ga. at 64-65.[4] The habeas court thus erred in applying

<u>Alexander</u> to conclude that Kohnle's counsel performed deficiently in 2010.[5]

---

[4] We note that there is a split among other jurisdictions as to whether to extend <u>Padilla</u> to advice about parole eligibility. Compare <u>Commonwealth v. Pridham</u>, 394 SW3d 867, 879 (Ky. 2012) (extending <u>Padilla</u> to advice about parole eligibility in case involving alleged affirmative misadvice); <u>Ex parte Moussazadeh</u>, 361 SW3d 684, 689-692 (Tex. Crim. App. 2012) (finding that counsel's failure to inform client about changes in the parole-eligibility statutes constituted deficient performance but declaring <u>Padilla</u> "not applicable to the facts" before the court); with <u>Arata v. State</u>, 509 SW3d 849, 853-854 (Mo. Ct. App. 2017) (counsel cannot be ineffective for merely failing to inform a defendant about parole eligibility); see also <u>United States v. Reeves</u>, 695 F3d 637, 640 (7th Cir. 2012) ("The Supreme Court created a rule in <u>Padilla</u> specific to the risk of deportation[.]"); <u>United States v. Youngs</u>, 687 F3d 56, 62 (2d Cir. 2012) ("<u>Padilla</u>'s holding was limited to the requirement of counsel to advise of deportation pursuant to their Sixth Amendment responsibilities."); <u>Webb v. State</u>, 334 SW3d 126, 131 n. 8, 138-139, 143-145 (Mo. 2011) (holding unnecessary to decide whether <u>Padilla</u> applies to parole eligibility given allegation counsel affirmatively provided misadvice; concurring and dissenting opinions indicate court divided over likely reach of <u>Padilla</u>). Moreover, other courts have indicated that extending <u>Padilla</u> to require advice about parole eligibility would amount to a new rule of constitutional law, inapplicable on collateral review. See <u>Plunk v. Hobbs</u>, 766 F3d 760, 769 (8th Cir. 2014) (en banc); <u>People v. La Pointe</u>, 40 NE3d 72, 90 (Ill. App. Ct. 2015).

[5] The habeas court suggested that the Court of Appeals has applied <u>Alexander</u> retroactively to a conviction that apparently became final before <u>Alexander</u> issued. See <u>Coleman v. State</u>, 337 Ga. App. 732 (788 SE2d 826) (2016). But in that decision, the Court of Appeals performed no analysis of whether <u>Alexander</u>'s holding should apply retroactively, citing <u>Alexander</u> only for the longstanding proposition that the voluntariness of a plea may depend on "'whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.'" Id. at 734 (1). Although <u>Coleman</u> involved some allegation by the appellant that counsel failed to properly advise him about various matters in advance of

13

(b)  *Remand is necessary so that the habeas court can consider Kohnle's alternative argument.*

Because the habeas court assumed that Alexander applied and thus granted relief based on Kohnle's claim that her counsel failed to advise her on parole eligibility at all, however, it did not consider her related claim that her counsel gave her *bad* advice on parole eligibility. The Warden contends in her appellate brief that Kohnle has not alleged that counsel gave her "misadvice" about parole, only that he gave her no advice. But in her brief before the habeas court, Kohnle argued that her counsel gave her advice that was "false, misleading and possibly deceitful"; she has made similar arguments to this Court. In particular, Kohnle directed the habeas court to testimony by counsel at the habeas hearing that she said showed that counsel wrongly assumed that parole release was within the complete discretion of the parole board and that the parole board could alter rules governing release at any time. Prior to Kohnle's plea, this Court had distinguished between the failure to inform about the "collateral consequences" of a guilty plea and an affirmative misrepresentation about those

his plea, the Court of Appeals rejected all of those arguments as not supported by the evidence. Id. at 735-738 (1), (2).

consequences, holding that a claim based upon the latter must be analyzed under Strickland. See Rollins v. State, 277 Ga. 488, 490 (1) (591 SE2d 796) (2004). As part of that pre-December 2010 body of law, we had found deficient performance based on misrepresentations about various consequences of a guilty plea, including parole eligibility. See Johnson v. Roberts, 287 Ga. 112, 113 (694 SE2d 661) (2010) (parole eligibility); Smith, 277 Ga. at 778-779 (1) (parole eligibility); Rollins, 277 Ga. at 490-492 (2) (immigration status and bar admission eligibility).[6] Although Kohnle emphasizes in her brief before this Court that her claim included allegations that plea counsel affirmatively misadvised her, the habeas court did not consider this claim given its reliance on Alexander. In particular, it did not make any findings of fact as to whether plea counsel affirmatively misadvised Kohnle, instead focusing its inquiry on the question of whether she knew she faced 30 years in prison before she would be eligible for parole. We decline to perform the requisite inquiry on the cold record — and express no opinion about the merits of Kohnle's claim — and

_____

[6] Although in Alexander we expressed doubt about whether the distinction between failing to advise and affirmatively giving incorrect advice was "ever appropriate," 297 Ga. at 62 n. 4, that affirmative misadvice can constitute deficient performance was clearly the law pre-Padilla.

15

remand for the habeas court to make appropriate findings of fact and conclusions of law.

Judgment vacated and case remanded. All the Justices concur.

Decided February 19, 2018.

Habeas corpus. Habersham Superior Court. Before Judge Smith.

Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellant.

Macklyn A. Smith, for appellee.