**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 14, 2020**

# In the Court of Appeals of Georgia

A19A1374. DODSON v. THE STATE.

HODGES, Judge.

On the fourth day of a jury trial, John Dollan Dodson changed his plea and entered pleas of guilty to one count each of aggravated assault with intent to commit rape (OCGA § 16-5-21 (a) (1)), kidnapping (OCGA § 16-5-40 (a)), aggravated assault (OCGA § 16-5-21 (a) (2)), and making false statements (OCGA § 16-10-20). The Superior Court of Seminole County denied Dodson's subsequent motion to withdraw his guilty plea, and Dodson appeals, asserting that he received ineffective assistance of post-conviction counsel. We find no error and affirm.

A grand jury indicted Dodson for two counts of aggravated sexual battery and one count each of rape, kidnapping with bodily injury, aggravated assault, making false statements, criminal attempt to commit subornation of perjury and false

swearing, and criminal attempt to commit influencing witnesses. In a pre-trial hearing, the State recited the maximum penalty for each offense and offered to allow Dodson to enter a plea of guilty to rape and serve 25 years followed by probation for life; the remaining seven counts of the indictment would be dismissed. Dodson rejected the State's offer during the hearing:

> [COUNSEL]: Judge, I have conveyed [the] offer to Mr. Dodson. We've gone over the specifics of it. We've talked about the pros and cons of going to trial and I've answered any questions he has, and he has indicated to me that he is not interested in pleading guilty and he wishes to proceed to trial.
>
> THE COURT: Mr. Dodson, the only thing I'm interested in is that you understand what you could be subjected to as far as punishment and that any plea offers that have been made that you have a clear understanding. The choice is yours on what to do with that and that is not a concern of mine. I just want to make sure that you have been conveyed that offer and that that is what you understand.
>
> [DODSON]: Yeah, he made me aware of the offer and I told [counsel] that I was – I want to go to trial.
>
> THE COURT: Okay. All right.

The trial court confirmed that, despite Dodson's rejection, the State's plea offer would "still [be] on the table[.]" Thereafter, the case proceeded to trial.

On the fourth day of trial, after the State had presented 20 witnesses as part of its case-in-chief and, in particular, after Dodson's girlfriend testified, Dodson appeared "fearful" and asked trial counsel if "the plea [was] still on the table[.]" Trial counsel then discussed a potential plea bargain with the prosecuting attorney and, after receiving an offer, trial counsel reviewed the offer with Dodson. Dodson also discussed the plea offer with his girlfriend and ultimately decided to enter a plea of guilty.

As the factual basis for the plea, the evidence demonstrated that Dodson waited for the victim inside a darkened mobile home, ambushed her by throwing a blanket over her head and grabbing her, and carried her to the master bedroom of the home. Dodson laid the victim on the bed, partially removed the victim's pants and, as the victim struggled to get away, forcibly inserted his penis into her vagina. The State offered to allow Dodson to plead guilty to the lesser included offenses of aggravated assault with intent to commit rape and kidnapping, as well as to aggravated assault and making false statements; the remaining four charges, as well as additional

unindicted charges, would be dismissed. At the beginning of the guilty plea hearing, the following exchange occurred:

> [TRIAL COUNSEL]: And Mr. Dodson, let the Judge finish his whole question first —
>
> THE COURT: And I did a poor job in —
>
> [DODSON]: I'm hard of hearing.
>
> THE COURT: Okay.
>
> [TRIAL COUNSEL]: Yeah, if you don't mind, he is hard of hearing.
>
> THE COURT: Okay. Well, what I want you [to] do, if I say something and you don't hear it and you don't understand it, let me know and we'll go over it until you do; okay?
>
> [DODSON]: Yes, sir.

At no point thereafter did Dodson express any difficulty in hearing or understanding the trial court's statements.[1] After examining Dodson and reviewing the terms of the

---

[1] On two occasions during the guilty plea hearing, the trial court repeated a question when it received no response from Dodson.

plea offer, including the sentences Dodson faced, the trial court stated that it would allow Dodson to withdraw his plea if he so desired:

> THE COURT: Do you want to withdraw your plea or stand by your plea?
>
> [DODSON]: Stand by it.
>
> THE COURT: All right.

The trial court then entered judgment against Dodson in accordance with the terms of the plea agreement. At the close of the hearing, the following transpired:

> THE COURT: If you are not satisfied, once again, I will give you an opportunity to withdraw your plea, but if you do you will lose the plea bargain. Do you want to withdraw your plea or stand by your plea?
>
> [DODSON]: Stand by it.
>
> THE COURT: My offer to let you withdraw your plea is terminated.

The trial court entered a judgment of conviction against Dodson for aggravated assault with intent to commit rape as a lesser included offense of rape, kidnapping as a lesser included offense of kidnapping with bodily injury, aggravated assault, and making false statements.[2]

---

[2] Ultimately, the trial court sentenced Dodson to an aggregate term of 25 years to serve followed by 20 years on probation. As a result, the term of incarceration did

Less than three weeks later, Dodson filed a pro se motion to withdraw his guilty plea, arguing that he was "not guilty of the charges," that he was pressured and rushed into entering a guilty plea by his counsel, that he did not understand the maximum sentences for the offenses, that he was "very hard of hearing[,]" and that it "takes [him] a while . . . to hear and understand what is being said." The trial court appointed post-conviction counsel for Dodson, who then filed an amended motion to withdraw Dodson's guilty plea adopting the arguments in Dodson's pro se motion.[3]

During the hearing on Dodson's motion,[4] trial counsel testified that

never once during my representation did Mr. Dodson ever indicate that he had a hearing problem. And I talked to him many times in the jail and

not increase from the State's pre-trial plea offer.

[3] While his motion to withdraw his guilty plea remained pending, Dodson also filed a pro se motion for an out-of-time appeal. However, because Dodson was represented by counsel at the time he filed the pro se motion, the trial court determined that the filing was a nullity and dismissed Dodson's motion. See, e.g., *Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24) (2014) ("A criminal defendant in Georgia does not have the right to represent himself and also be represented by an attorney, and pro se filings by represented parties are therefore 'unauthorized and without effect.'") (citation omitted).

[4] Although he was then represented by new post-conviction counsel, Dodson also filed a pro se request to withdraw his motion to withdraw his guilty plea. The record does not indicate that the trial court ruled on Dodson's request, but Dodson did elect to proceed with the motion to withdraw his guilty plea following a discussion with post-conviction counsel at the hearing.

. . . never once did it come up. It never came up once during the trial, the entirety of the trial, that he indicated to me he couldn't hear anything. He never indicated during our discussion of the plea deal the he didn't — couldn't hear what I was saying to him. So no, that never came up.[5]

In fact, trial counsel agreed that Dodson had been "smirking and laughing" during trial counsel's testimony, and Dodson himself had an outburst at one point during the hearing in which he contradicted trial counsel's testimony:

Q: And what was purchased in Bainbridge was what he always purchased, Marlboro cigarettes, I think, and a Mountain Dew.

A: Yes.

Q: And so ---

[DODSON]: There was no record saying that it was Mountain Dew.

THE COURT: Sir — Mr. Dodson, you're not on the stand, this isn't Court TV, you've got nothing to say unless your attorney puts you

---

[5] Dodson retained trial counsel prior to his arraignment, and trial counsel represented Dodson from that point through and including Dodson's trial and guilty plea hearing — a span of almost six months during which trial counsel met with Dodson more than ten times. Although trial counsel's testimony contradicted his statement to the trial court during Dodson's guilty plea hearing that Dodson was "hard of hearing[,]" as discussed below, this discrepancy does not alter our conclusions.

on the stand. If you do have a question about something, you need to address it with [post-conviction counsel]. No more outbursts, no more comments. And I would say the same to any other witness that was here.

The prosecuting attorney likewise stated that Dodson's "hearing was never a problem that some Defendants do have. It never was an issue. We didn't have to make any arrangements for him to sit in a certain place or — where he couldn't hear what was going on." After a discussion with post-conviction counsel, Dodson elected not to testify at the hearing.

In its order denying Dodson's motion, the trial court found that Dodson "entered his plea knowingly, intelligently, and voluntarily." The trial court also reviewed Dodson's verbal responses to the trial court's questions during the plea colloquy. Finally, the trial court noted that Dodson stated

> that he has hearing problems and that this contributed to a supposed lack of awareness or understanding of the plea bargain. However, at the hearing on August 22, 2018, there was no evidence presented regarding [Dodson's] hearing. [Dodson] did not take the stand. There was no medical evidence presented from an ENT or audiologist. Based on this, the court does not find any evidence to support [Dodson's] supposed hearing problems and *does not find that this would have led to a lack of understanding regarding the plea*.

(Emphasis supplied.) The trial court denied Dodson's motion to withdraw his guilty plea, concluding that the State "met its burden and [Dodson] . . . entered his plea knowingly, intelligently, and voluntarily[.]" This appeal followed.

In a single enumeration of error, Dodson suggests that he received ineffective assistance of post-conviction counsel due to counsel's failure to call an expert witness on hearing loss in support of his motion to withdraw his guilty plea. Because this is the first opportunity for Dodson to challenge post-conviction counsel's actions or inaction, Dodson requests that we remand this case to the trial court for an evidentiary hearing to develop his claim of ineffective assistance. However, for the following reasons, we conclude that a remand is unnecessary.

Under Georgia law,

> when the appeal presents the earliest practicable opportunity to raise an
> ineffectiveness claim, and the claim is indeed raised for the first time on
> appeal, we remand the case to the trial court for an evidentiary hearing
> on the issue. Remand is not mandated, however, if we can determine
> from the record that [the defendant] cannot satisfy the two-prong test set
> forth in *Strickland v. Washington* [466 U. S. 668 (104 SCt 2052, 80
> LE2d 674) (1984)].

(Citations omitted.) *Stuart v. State*, 274 Ga. App. 120, 121 (616 SE2d 855) (2005); see also *Godfrey v. State*, 274 Ga. App. 237, 241 (2) (617 SE2d 213) (2005).[6]

Therefore, to evaluate Dodson's claim, we look to the record and to the test "set forth in *Strickland v. Washington . . .* to determine whether counsel's performance was deficient, and, if so, whether [Dodson] was prejudiced by the deficiency." (Citations omitted.) *Coleman v. State*, 337 Ga. App. 732, 734 (1) (788 SE2d 826) (2016); see also *Moore v. State*, 246 Ga. App. 163, 169 (10) (539 SE2d 851) (2000). "In order to show prejudice, a defendant must establish that, but for the inadequate performance of counsel, there is a reasonable probability that the result would have been different." (Citation and punctuation omitted.) *Moore*, 246 Ga. App. at 169 (10). In other words, "the defendant must show that there is a reasonable probability that, but for the ineffective assistance of motion counsel, [his motion to withdraw his guilty plea] would have been granted." *Hayes v. State*, 262 Ga. 881, 883 (3) (426 SE2d 886) (1993). "If the defendant is unable to satisfy either the deficiency or prejudice prong of the test, his ineffective assistance claim fails." (Citation omitted.) *Coleman*, 337 Ga. App. at 734 (1).

---

[6] As a result, contrary to Dodson's request, there is no Pavlovian response that an appeal is automatically remanded when a new, but timely, claim of ineffective assistance of counsel is raised on appeal.

In this case, the record establishes no reasonable probability that Dodson's motion to withdraw his guilty plea would have been granted but for post-conviction counsel's alleged errors. Under Georgia law,

> [w]hen a defendant challenges the validity of his guilty plea, the State bears the burden of showing that the plea was entered voluntarily and intelligently and that the defendant had an understanding of the nature of the charges against him and the consequences of the plea. The State may meet its burden in two ways: (1) showing on the record of the guilty plea hearing that the defendant was cognizant of all the rights he was waiving and the possible consequences of his plea; or (2) filling a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary.

(Citation omitted.) *Zellmer v. State*, 273 Ga. App. 609, 611 (2) (615 SE2d 654) (2005). It is well-settled that the proper entry of a guilty plea "involves the waiver of three federal constitutional rights: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers, and the trial court has a duty to ensure that the defendant understands the constitutional rights being waived." (Citations omitted.) *State v. Cooper*, 281 Ga. 63, 64 (1) (636 SE2d 493) (2006).

11

As a threshold matter, in addition to the testimony from the prosecuting attorney and, in particular, Dodson's trial counsel that Dodson never manifested hearing loss sufficient to require any accommodations, evidence in the record from Dodson's guilty plea hearing does not support a remand. The true thrust of Dodson's argument is that, due to his hearing loss, he "didn't understand what was going on at the time, and therefore could not enter a voluntary, knowing, and intelligent plea. . . ." In this case, the record includes the transcript of Dodson's guilty plea hearing as well as written plea waiver forms. In both, Dodson confirmed that he was aware of his rights to a trial by jury and to confront adverse witnesses as well as the privilege against self-incrimination, and that he would waive those rights by entering a plea of guilty. Moreover, Dodson affirmed that no one had threatened him and that his guilty plea was entered "of [his] own free will." He also agreed that he had "adequate time to confer with [his] attorney" and that he had read the indictment; understood the charges and the potential sentences he faced; and discussed his case and the plea offer with trial counsel. As a result, the trial court found that Dodson "fully [understood] the nature of the charges, the consequences of [his] plea, [and] that [his] plea [was] freely, voluntarily, knowingly and intelligently entered[.]" Even so, on two occasions

during the hearing, the trial court offered Dodson the opportunity to withdraw his plea; Dodson declined.

Furthermore, as we previously stated, the record includes documentary evidence demonstrating that Dodson understood the charges and sentences he faced. First, Dodson executed a "Plea Petition and Waiver of Rights" form that outlined his rights, including the right to trial by jury, the right to confront adverse witnesses, and the privilege against self-incrimination, and that he would waive those rights by entering a guilty plea. Second, Dodson signed a "Plea Recommendation" form that listed the charges Dodson faced, the range of punishment for each charge, and the State's recommendation for a plea bargain; each line item accurately reflected the plea offer tendered to Dodson. Of note, the form included the following provision, which Dodson acknowledged:

> I can read and have read both pages of the above and certify that it is true and correct. I have also reviewed every line of this document with my attorney, I fully understand it, and I petition the court to accept my plea and to accept the above plea agreement and to impose that plea agreement and the above probation conditions as my sentence in this case.
>
> By our signatures below, my attorney and I both further certify to the court that the contents of this form are true and correct, that we have

13

discussed the elements of the charged offense(s), all the facts of this case, any potential defenses, the maximum possible sentence, the consequences of pleading guilty, and that my decision to plead guilty was freely, voluntarily, and understandably made by myself.

Third, Dodson executed a plea of guilty form which listed the charges to which he agreed to plead guilty. Fourth, Dodson signed an "Additional Conditions of Probation - Sex Offenders" form reciting the conditions of his sentence of probation. Accordingly, notwithstanding whatever hearing deficiency Dodson may have had, documentary evidence, which Dodson acknowledged and signed, revealed that he understood the charges and the terms of the plea offer he accepted.[7]

Moreover, in addition to the record evidence discussed above, because Dodson did not testify at the hearing on his motion to withdraw his guilty plea, he has not

---

[7] Neither *Hills v. State*, 296 Ga. App. 101, 102-103 (673 SE2d 614) (2009), nor *Godfrey*, 274 Ga. App. at 242, require a different result. In both cases, post-conviction counsel for the defendants did not call the defendants' trial counsel as witnesses. *Hills*, 296 Ga. App. at 101, 103; *Godfrey*, 274 Ga. App. at 242. Accordingly, there was *no* evidence of trial counsels' interaction with the defendants concerning the entry of the defendants' guilty pleas. In contrast, the record in this case contains testimony from the prosecuting attorney and, more importantly, Dodson's trial counsel regarding Dodson's guilty plea and his level of understanding of the plea. Moreover, the written guilty plea documents further ameliorated any impact from Dodson's alleged hearing loss. As a result, neither *Godfrey* nor *Hills* alter our analysis.

rebutted the State's evidence and cannot show what effect, if any, his alleged hearing difficulty had on his understanding of the plea offer. Cf. *Stevens v. State*, 329 Ga. App. 91, 93 (6) (762 SE2d 833) (2014); *Jacobs v. State*, 299 Ga. App. 368, 371 (1) (683 SE2d 64) (2009). Finally, in its order denying Dodson's motion to withdraw his guilty plea, the trial court specifically found that Dodson's "supposed hearing problems . . . would [not] have led to a lack of understanding regarding the plea."

In closing, the sum of this evidence, taken from the record on appeal, belies Dodson's argument that his hearing so affected his understanding of the plea offer that his plea was not knowingly and voluntarily entered. As a result, despite any alleged hearing loss, there is no indication that the result of his motion to withdraw his guilty plea would have been different had post-conviction counsel presented any additional witnesses in view of the written plea waiver forms Dodson signed. Because the record demonstrates that Dodson "cannot satisfy the two-prong test set forth in *Strickland v. Washington*[,]" a remand is unnecessary. *Stuart*, 274 Ga. App. at 121. Accordingly, we affirm the judgment of the trial court denying Dodson's motion to withdraw his guilty plea.

*Judgment affirmed. Dillard, P. J., Gobeil, J., concur.*

15